MARY STUART COFFIN AND MARY E. BURNETT v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF DETROIT, AND EDWARD H. KENNEDY AND HENRY S. POTTER v. HAZEN S. PINGREE, MAYOR, ETC., ET AL.

*Constitutional law—Female suffrage.*

Act No. 138, Laws of 1893, which provides "that in all school, village, and city elections hereafter held in this State women who are able to read the Constitution of the State of Michigan, printed in the English language, shall be allowed to vote for all school, village, and city officers, and on all questions pertaining to school, village, and city regulations, on the same terms and conditions prescribed by law for male citizens," is unconstitutional.

*Mandamus.* Argued October 10, 1893. Denied in the former case, and granted in the latter, October 24, 1893.

Relators Coffin and Burnett applied for *mandamus* to compel the first-named respondents to provide means for carrying out the provisions of Act No. 138, Laws of 1893;

and relators Kennedy and Potter, to restrain the registration of women thereunder.

*Henry A. Haigh, John Atkinson, John B. Corliss,* and *Thomas T. Leete, Jr.,* for the law.

*James H. Pound, Edwin F. Conely,* and *A. A. Ellis,* Attorney General, *contra.*

McGRATH, J.   These proceedings are instituted to test the validity of Act No. 138, Laws of 1893, which is as follows:

"SECTION 1.   *The People of the State of Michigan enact,* That in all school, village, and city elections hereafter held in this State women who are able to read the Constitution of the State of Michigan, printed in the English language, shall be allowed to vote for all school, village, and city officers, and on all questions pertaining to school, village, and city regulations, on the same terms and conditions prescribed by law for male citizens.   Before any woman shall be registered as a voter, the board of registration shall require her to read, and she shall read, in the presence of said board, at least one section of the Constitution of this State in the English language.

"SEC. 2.   All laws of this State prescribing the qualifications of voters at school, village, and city elections therein shall apply to women, and women who are able to read the Constitution of Michigan, as above provided, shall enjoy all the rights, privileges, and immunities, and be subject to all the penalties, prescribed for voters at such elections.

"SEC. 3.   Women who are entitled to vote under the preceding sections of this act shall be subject to all laws relating to the registration of voters, and be liable to all penalties attached to the violation of such laws, and their names shall be received and registered by the various boards of registration at the time and in the manner required by law for other voters."

The general rule is that the source of all authority to vote at popular elections is the constitution; that the electorate is constituted by the fundamental law; and that the qualifications of electors must be uniform throughout the state.   Mr. Madison, in the Federalist, No. 52, says:

"The definition of the right of suffrage is very justly regarded as a fundamental article of republican government."

In *Attorney General v. Detroit Common Council*, 58 Mich. 213, 216, Mr. Justice CAMPBELL says:

"As the right of voting is the same everywhere, it is obvious that the conditions regulating the manner of exercising it must be the same in substance everywhere. * * * It cannot be lawful to create substantial or serious differences in the fundamental rights of citizens in different localities, in the exercise of their voting franchises."

In Cooley's Constitutional Limitations (page 599) it is said:

"Wherever the constitution has prescribed the qualifications of electors, they cannot be changed or added to by the legislature, or otherwise than by an amendment of the constitution."

In *McCafferty v. Guyer*, 59 Penn. St. 109, Strong, J., says:

"It has always been understood that the legislature has no power to confer the elective franchise upon other classes than those to whom it is given by the constitution, for the description of those entitled is regarded as excluding all others."

Section 1 of article 7 of the Constitution provides who shall be electors and entitled to vote, and is, according to its terms, applicable "in all elections." To empower the Legislature to confer the elective franchise upon classes of persons other than those named, some other provision must be pointed out which confers that authority in express terms or by necessary implication. The only provisions to which we are cited are sections 13 and 14 of article 15, which are as follows:

"SECTION 13. The Legislature shall provide for the incorporation and organization of cities and villages. * * *
"SEC. 14. Judicial officers of cities and villages shall

be elected, and all other officers shall be elected or appointed, at such time and in such manner as the Legislature may direct."

In support of the act in question, it is contended that the sections last quoted empower the Legislature to provide qualifications for voters in village and city elections; and *Belles v. Burr*, 76 Mich. 1; *Wheeler v. Brady*, 15 Kan. 26; *State v. Cones*, 15 Neb. 444; *Opinion of the Justices*, 115 Mass. 602; *Plummer v. Yost*, 33 N. E. Rep. (Ill.) 191,—are relied upon to support this contention. These cases involved the validity of acts conferring upon females the right to vote for school-district officers, under constitutions which, like our own, name no school-district officer, do not prescribe or suggest how such officers shall be chosen, but in express terms relegate to the legislature the duty of providing for and establishing a system of primary schools. In *Belles v. Burr*, Mr. Justice CHAMPLIN reviewed at length the legislation in respect to the qualifications of voters at school-district meetings under the Constitution of 1835, and says:

"Viewing the question historically, it is apparent that for 50 years it has never been considered that the qualifications of voters at school-district meetings must be identical with those prescribed in the Constitution as qualifications of electors entitled to vote under that instrument. The authority granted by the Constitution to the Legislature to establish a common or primary school system carried with it the authority to prescribe what officers should be chosen to conduct the affairs of the school-districts, to define their powers and duties, their term of office, and how and by whom they should be chosen. School-districts are regarded as municipal corporations. * * * As such they preceded the Constitution, * * * and were recognized by that instrument. * * * But no officer of the school-district is mentioned or recognized by that instrument. The reason is that the whole primary school system was confided to the Legislature, and it cannot be said that the officers of school-districts, chosen pursuant to the system adopted by the Legislature, are constitutional officers. The Constitution provided for no municipal subdivisions smaller than towns,

except cities and villages, and it authorized the Legislature
to incorporate these.   *   *   *   While it must be conceded
that no person can vote for the election of any officer men-
tioned in the Constitution unless he possesses the qualifica-
tions of an elector prescribed by that instrument, it does
not follow that none but such electors can vote for officers
which the Legislature has the right to provide for, to carry
out the educational purpose declared in that instrument."

Mr. Justice CAMPBELL, in a dissenting opinion, insisted
that the question was not whether plaintiff was entitled to
vote at a school meeting; that a school meeting under the
control of school authorities was entirely separate and
distinct from a popular election; that the clause of the act
then under consideration must be construed as confining
the additional qualifications to voting at school meetings;
that distinct school government in cities had been adjusted
to city conditions; that the powers exercised by city school
boards were analogous to those of township inspectors,
although more extensive; that these city boards had been
made by the Constitution the correlative bodies to the
township boards, and that school inspectors were recog-
nized constitutional officers.   Mr. Justice MOUSE recognizes
the point upon which the Court divided, when he says:

"I cannot find in the present case that the trustees of
the Union school-district of Flint are made school inspect-
ors in the sense that they are named in the Constitution.
If they were, I should hold that Mrs. Belles was not
entitled to vote for them."

Mr. Justice CAMPBELL then proceeds to discuss, not the
question as to whether the Legislature has the power to
enlarge or restrict the qualifications of voters at district
school meetings, but whether that power exists as to popu-
lar elections for officers of cities and villages, the existence
of whom are within the contemplation of the Constitution.
He says:

"The power of local administration and regulation which
may be allowed to cities and counties is vested in those

corporations as such, and it cannot authorize the Legislature to change the right of suffrage.   *   *   *   Cities have elected judges and justices, who cannot be in office without election, and who perform functions precisely like those elsewhere.   The city is represented on the board of supervisors, who are, except in Wayne county, the same everywhere.   The city ward is the constitutional place of election.   To import into the Constitution power to enlarge suffrage for one officer must reach all officers.   *   *   * When an election for any local officer is required by law, the Constitution declares who shall be qualified to act as electors."

The majority in that case held that the Constitution of 1835, as well as that of 1850, had in terms authorized the Legislature to construct a primary school system, and that for years antedating the present Constitution the Legislature had construed a similar provision as conferring the power to determine the qualifications of voters for district school officers.

The Legislature had, for many years prior to the adoption of the present Constitution, exercised the power of providing for the incorporation of cities and villages, and, in the exercise of that power, had in each instance determined what officers should be elected and what appointed, and the time and manner of both election and appointment.   The question of municipal government has long exercised thoughtful minds, and the propriety of an educational qualification or a property qualification, and of female suffrage, have been much discussed; yet this is the first instance in which the Legislature has attempted to extend the right of suffrage to persons other than those named in the Constitution.   Many of the charters granted for the incorporation of cities and villages contain no reference whatever to the qualifications of voters.

The power to provide for the incorporation of cities is not unlike that given for the organization of counties; and

97 Mich.—13.

the authority to direct the time and manner in which judicial officers shall be elected, and the other officers elected or appointed, does not involve the power to determine who shall constitute the electorate. The word "manner," it is true, is one of large signification, but it is clear that it cannot exceed the subject to which it belongs. It relates to the word "elected." The Constitution had already provided for electors, and when it provides that an officer shall be elected it certainly contemplates an election by the electorate which it has constituted. No other election is known to the Constitution, and, when it provides that the Legislature may direct the manner in which an officer shall be elected, it simply empowers the Legislature to provide the details for the holding of such election. The machinery of government differs in its details in cities, villages, and townships, and there must necessarily be differences in methods and officers to administer the election laws.

In *Ahrens v. English*, 139 Ill. 622, relator claimed the right to vote for a county superintendent of schools. The constitution of that state provided that "there may be a county superintendent of schools in each county, whose qualifications, powers, duties, compensation, and time and manner of election, and term of office shall be prescribed by law." The court say:

"The constitution having made provision for such officer and for his 'election,' and having prescribed in another article and section the qualifications essential to entitle a person to vote at 'any election,' it must be presumed that it was and is the true intent and meaning of that instrument that no person should have the right to vote for such officer who does not possess such qualifications. * * * The word 'manner' is usually defined as meaning way of performing or executing; method; custom; habitual practice, etc. * * * It indicates merely that the legislature may provide by law the usual, ordinary, or necessary details required for the holding of the election."

In the case of *People v. Hurlbut*, 24 Mich. 44, which involved the power of the Legislature to appoint the members of the board of public works of the city of Detroit, this very provision (section 14, art. 15) of the Constitution was under consideration, and, in very exhaustive opinions by Justices CHRISTIANCY, CAMPBELL, and COOLEY, was given a construction which is opposed to that contended for in support of the act in question here.    Mr. Justice CHRISTIANCY there says:

" In respect to the election, the inference is very strong and satisfactory that it was intended to be only an election by the electors of the locality.    This accords with the meaning of the term as generally used in the Constitution, in reference not only to the State at large, but in reference to the local organization of. counties, towns, and districts; and, cities and villages being local organizations for like governmental purposes, it is difficult, if not impossible, to resist the conclusion that, when this section (section 13, art. 15) of the Constitution declares that ' judicial officers of cities and villages shall be elected,' an election by the electors of such localities was intended, as this was precisely the principle adopted by the Constitution in reference to all other judicial officers, and there is no reasonable ground for saying that the election of other officers mentioned in the immediate context was to be of a different character.    And it may be said with certainty that, wherever in the Constitution the election of an officer is provided for, it means an election by the electors of the State, if it be a State officer, or of the district or political division for which he is to be elected, unless the Constitution itself, as to any particular election, provides otherwise."

Mr. Justice COOLEY, in the same case, says:

" That instrument provides (article 15, § 14) that ' judicial officers of cities and villages shall be elected, and all other officers shall be elected or appointed, at such time and in such manner as the Legislature may direct.'    It is conceded that all elections must, under this section, be by the electors of the municipality.    But it is to be observed that there is no express declaration to that effect to be found in the Constitution; and it may well be asked what there is to localize the election any more than the appoint-

ments. The answer must be that, in examining the whole instrument, a general intent is found pervading it which clearly indicates that these elections are to be by the local voters, and not by the Legislature, or by the people of a larger territory than that *immediately* concerned. I think, also, that, when the Constitution is examined in the light of previous and contemporaneous history, the like general intent requires, in language equally clear and imperative, that the choice of the other corporate officers shall be made in some form, either directly or indirectly, by the corporators themselves."

It follows that the act in question is invalid; that the *mandamus* in the first-named case must be denied, and the writ of prohibition granted in the case last named.

The other Justices concurred.

MONTGOMERY, J. I concur in the conclusion reached by Mr. Justice McGRATH that the provisions of section 14, art. 15, by necessary implication require that officers who may be made elective under the provisions of this section must be chosen by electors having the qualifications prescribed in section 1, art. 7, of the Constitution. The history of the proceedings of the convention of 1850 leads me irresistibly to the conclusion that such was the intention of the members of that convention. As first reported by the committee on the organization of the government of cities and villages, this section read as follows:

"All judicial officers of cities and villages shall be elected at such time and in such manner as the Legislature may direct; all other officers of such cities and villages shall be elected by the electors thereof, or appointed by such authorities thereof as the Legislature shall designate for that purpose." See Convention Debates, 1850, p. 326.

The article in this form was ordered engrossed for a third reading. Id. p. 596. The journal of the convention shows that, on the 31st day of July, the article on cities and villages, which included the sections above quoted, was read a third time, passed, and, under the rule, referred to

the committee on arrangement and phraseology.    Convention Journal, p. 312.    When reported back by the committee on phraseology, the section read as follows:

"Officers of cities and villages shall be elected at such time and in such manner as the Legislature may direct."

The section was thereupon, on motion of Mr. McClelland, amended by inserting the word "judicial" at the commencement of the section, and the words "and all other officers shall be elected or appointed," after "elected," in the first line of the section.    Id. p. 494.    It is very clear that the purpose of the amendment was to correct the omission of the provision permitting the appointment of officers to be provided for, and it is very significant that, if the committee intended by the change in phraseology to omit the provision that elective officers should be chosen by the electors of municipalities, no member of the convention discovered that such was the effect of their report. The inference is plain that the convention deemed the provisions of section 1, art. 7, defining the qualifications of electors "in all elections," applicable to elections which might be held under this section.    That the proceedings of the convention may be examined for the purpose of ascertaining the probable intention of the framers of the Constitution is well settled.    See *People v. Blodgett*, 13 Mich. 127.

The other Justices concurred.