WELLS *v.* KENT COUNTY BOARD OF
ELECTION COMMISSIONERS.

1. Constitutional Law—"Method of Election".
Term "method of election" as used in constitutional provisions giving legislature power to provide method of election of district judges by law applies to details of an election and not to what may be considered to be substantial rights or benefits conferred only upon certain candidates; authority granted to legislature by such provisions is to be exercised within the entire framework of the judicial article (Const 1963, art 6, § 26).

2. Statutes—Subsequent Amendment of Constitution—Incumbency Designation on Judicial Ballot.
Amendment of Constitution whereby restriction of designation of incumbency to judicial office to *elected* incumbents was

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur 2d, Elections §§ 4–6.
[2, 6, 7] 26 Am Jur 2d, Elections § 218.
[3] 25 Am Jur 2d, Elections §§ 6, 7.
[4] 26 Am Jur 2d, Elections §§ 202–207.
[5] 16 Am Jur 2d, Constitutional Law § 56.
[8] 5 Am Jur 2d, Appeal and Error § 1009.

deleted is not considered significant in determining validity of statute purporting to entitle an elected incumbent municipal or associate municipal judge who is a candidate for district judge to designation on the ballot of the judicial office of which he is then incumbent, where the district judgeships replaced the municipal judgeships pursuant to constitutional mandate and the amendment of the Constitution was not effective at time the statute was enacted (Const 1963, art 6, § 24, as amended in 1968; PA 1961, No 236, § 9923[3], as added by PA 1968, No 154).

3. CONSTITUTIONAL LAW—PURITY OF ELECTIONS—POWER OF LEGISLATURE.

The legislature has the power under the State Constitution to enact laws to preserve the purity of elections, to preserve secrecy of the ballot, and to guard against abuses of the elective franchise (Const 1963, art 2, § 4).

4. ELECTIONS—BALLOTS—DUTY OF OFFICIALS.

Election officials have the duty to prepare election ballots in a manner that will most effectively comply with the constitutional mandate regarding the preservation of the purity of elections even in absence of specific constitutional or statutory provisions (Const 1963, art 2, § 4).

5. CONSTITUTIONAL LAW—PURITY OF ELECTIONS—STATUTES.

Constitutional mandate that the purity of elections shall be preserved by law carries with it the corollary that any law enacted by legislature which adversely affects the purity of elections is constitutionally infirm (Const 1963, art 2, § 4).

6. ELECTIONS — BALLOTS — CANDIDATES — DISTINGUISHING DESIGNATIONS.

Any grant by election officials of a ballot designation distinguishing one candidate from another should be upheld only if it is clearly within constitutional exceptions permitting such designation or it aids in preserving purity of elections.

7. SAME — BALLOT DESIGNATIONS — MUNICIPAL JUDGE — DISTRICT JUDGE — STATUTE — CONSTITUTIONAL LAW.

Trial court correctly ruled unconstitutional as an abuse of elective franchise section of act establishing district court which granted municipal judges a ballot designation as such when seeking election as district judges since only municipal judges were granted such designations and since such a designation constitutes advertising for a candidate that would afford him an unfair advantage (PA 1961, No 236, § 9923 [3], as added by PA 1968, No 154).

8. Costs — Public Question — Designation of Incumbency on Ballot — District Judges.

> No costs are allowed on appeal in action by candidate for district judge seeking ballot designation as municipal judge granted by statute, a public question being involved (PA 1961, No 236, § 9923[3], as added by PA 1968, No 154).

Appeal from Kent, Vander Wal (John H), J., and from Court of Appeals prior to decision. Submitted on briefs September 12, 1968. (Calendar No. 14, Docket No. 52,165.) Order entered September 20, 1968. Opinions filed June 2, 1969.

Complaint by Edward D. Wells against Kent County Board of Election Commissioners to require defendant's compliance with election statute. Judgment dismissing complaint. Plaintiff appeals prior to decision by Court of Appeals. Affirmed.

*Cholette, Perkins & Buchanan* (*Sherman H. Cone,* of counsel), for plaintiff.

*Vander Veen, Freihofer & Cook,* for defendant.

Adams, J. Plaintiff qualified as a candidate for the newly-created office of district judge of the 63d district. Plaintiff is presently an elected municipal judge of the city of East Grand Rapids, serving in that capacity. PA 1961, No 236, § 9923(3), as added by PA 1968, No 154 (MCLA § 600.9923[3], Stat Ann 1969 Cum Supp § 27A.9923[3]), provides:

"(3) In the primary and general election of judges of the district court to be held in 1968 any elected incumbent municipal or associate municipal judge who is a candidate for district judge shall be entitled to the designation on the ballot that he holds the judicial office of which he is then incumbent."

Pursuant to instructions from the director of the elections division of the office of the secretary of State, the Kent county clerk denied plaintiff such designation in the primary election. Having been advised by the clerk that he would also be denied the designation in the election to be held November 5, 1968, plaintiff filed his complaint with the circuit court requesting that an order be issued requiring defendant to comply with the provisions of the statute. The circuit court declared the quoted portion of the statute unconstitutional and dismissed plaintiff's complaint. This Court granted leave to appeal prior to decision by the Court of Appeals. Due to the need for decision in time for the 1968 November election, an order was issued by the Court on September 20, 1968 affirming the circuit judge. Justices BLACK, O'HARA and BRENNAN dissented. This opinion follows as the opinion of the majority.

The issue in this case is the constitutionality of section 9923(3), as added by PA 1968, No 154.

It was the claim of appellant that Const 1963, art 6, § 26 provides that the method of election of judges of the new district courts shall be as prescribed by law and that such constitutional provision authorized the legislature to pass the statute in question. The pertinent portion of section 26 reads:

"The offices of circuit court commissioner and justice of the peace are abolished at the expiration of five years from the date this constitution becomes effective or may within this period be abolished by law. Their jurisdiction, compensation and powers within this period shall be as provided by law. Within this five-year period, the legislature shall establish a court or courts of limited jurisdiction with powers and jurisdiction defined by law. The location of such court or courts, and the qualifications, tenure, *method of election* and salary of the judges of such court or courts, and by what gov-

ernmental units the judges shall be paid, shall be provided by law, *subject to the limitations contained in this article."* (Emphasis added.)

In *Coffin* v. *Election Commissioners* (1893), 97 Mich 188 (21 LRA 662), this Court said (p 194):

"The word 'manner,' it is true, is one of large signification, but it is clear that it cannot exceed the subject to which it belongs. It relates to the word 'elected.' The Constitution had already provided for electors, and when it provides that an officer shall be elected it certainly contemplates an election by the electorate which it has constituted. No other election is known to the Constitution, and, when it provides that the legislature may direct the manner in which an officer shall be elected, it simply empowers the legislature to provide the details for the holding of such election."

We construe "method of election" as the Court did the word "manner" in *Coffin*. It applies to the details of an election, not to what may be considered to be a substantial right or benefit conferred upon only certain candidates. Furthermore, the final clause of the first paragraph, "subject to the limitations contained in this article," makes it clear that any authority granted to the legislature by section 26 is to be exercised within the entire framework of judicial article 6.

In the case of *Burdick* v. *Secretary of State* (1964), 373 Mich 578, this Court considered article 6, § 24 which provides:

"There shall be printed upon the ballot under the name of each elected incumbent justice or judge who is a candidate for nomination or election to the same office the designation of that office."[1]

[1] The above section of the Constitution was amended on August 6, 1968 by the deletion of the word "elected." The amended provision became effective September 20, 1968. Since the amended provi-

A majority of the Court concluded that the mandatory requirements of the section were such as clearly to exclude from the right of designation any candidate other than one who could qualify for the designation in accordance with the provisions of section 24.

In the early case of *People, ex rel. Twitchell,* v. *Blodgett* (1865), 13 Mich 127, this Court followed a similar line of reasoning. A constitutional requirement that an elector "has resided in this state three months, and in the township or ward *in which he offers to vote,* ten days next preceding such election" (emphasis added) was found to mean that the elector must make the offer to vote in person. Soldiers could not, therefore, pursuant to statute, be authorized to vote by absent voter's ballot. The Court said (p 139):

"If the people, in establishing their government, see fit to place restrictions upon the exercise of any privilege, it must be assumed that in their view the exercise of the privilege without the restriction would be inexpedient and dangerous, and would not, therefore, have been permitted. Every restriction imposed by the Constitution must be considered as something which was designed to guard the public welfare, and it would be a violation of duty to give it any less than the fair and legitimate force which its terms require. What the people have said they design, they have an absolute and paramount right to have respected."

The above passage was quoted with approval in the majority opinion in *Lockwood* v. *Commissioner of Revenue* (1959), 357 Mich 517, 557.

sion was not in effect at the time of the enactment of PA 1968, No 154, we do not consider it to be of significance to the issue in this case.

Plaintiff urges that *Burdick* be reconsidered, pointing out that section 24 in no way denies the use of a designation for candidates to judicial office but simply grants a designation to elected incumbent justices or judges. The precise question in *Burdick* has been dealt with by the people by constitutional amendment, as noted in footnote 1, *ante,* and consequently is not before us at this time.

Const 1963, art 2 specifically deals with elections. Art 6, § 24 must be considered in connection with it. Section 4 of article 2 provides:

"The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States. The legislature *shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise,* and to provide for a system of voter registration and absentee voting. No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames." (Emphasis added.)[2]

While the above section restrains the legislature from conferring on a partisan candidate a ballot designation (except when required for identification of the candidates for the same office), it is silent as to a ballot designation for a nonpartisan candidate.

[2] The Constitution of 1908 provided (art 3, § 8):
"Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise, and to provide for the recall of all elective officers, except judges of courts of record and courts of like jurisdiction upon petition of twenty-five per centum of the number of electors who voted at the preceding election for the office of governor in their respective electoral districts." The Constitution of 1850 provided (art 7, § 6):
"Laws may be passed to preserve the purity of elections and guard against abuses of the elective franchise."

Appellant contended that the ballot designation of municipal judge would be beneficial to the electorate in that it would inform an elector about the background of a candidate, and that the provision is a reasonable exercise of legislative power to pass laws with regard to the purity of elections.

The phrase "purity of elections" has been considered in a number of cases. In *Attorney General v. Board of Councilmen of the City of Detroit* (1885), 58 Mich 213, an act which provided for the appointment of two persons from each of the two leading political parties to be election inspectors was held unconstitutional as making particular political opinions a condition to holding office. The Court said (p 216):

"There is nothing in the Constitution which permits the legislature, under the desire to purify elections, to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise."

*Attorney General, ex rel. Conely, v. Common Council of the City of Detroit* (1889), 78 Mich 545, involved a legislative attempt to impose certain registration requirements. It made no provision for registration of persons who were sick or absent on registration days. Naturalized persons were required to present their papers or other evidence even though they had exercised their elective franchise for years. The Court, in declaring the law unconstitutional, said (p 559):

"The object of a registry law, or of any law to preserve the purity of the ballot-box, and to guard against abuses of the elective franchise, is not to prevent any qualified elector from voting, or unnecessarily to hinder or impair his privilege. It is for the purpose of preventing fraudulent voting."

In *Maynard* v. *Board of Canvassers* (1890), 84
Mich 228 (11 LRA 332), the Court struck down a
statute providing for cumulative voting for State
representatives in multiple districts. CHAMPLIN,
C. J., writing for a majority of the Court, stated
(pp 241, 242):

> "*It is true, the Constitution does not prohibit the
> legislature by express language from concocting
> some scheme by which the equality of the electors
> in the choice of representatives may be impaired
> or defeated.* There is nothing in the Constitution
> which by express language prohibits the legislature
> from enacting a law providing that such electors
> as appear by the assessment roll of the preceding
> year to have been assessed $1,000 and upward shall
> have an additional vote for each $1,000 for which
> they are assessed and pay taxes on. This would
> permit every elector qualified under the Constitution
> to vote at least once, and others to vote as many
> times as they were assessed $1,000 upon the assess-
> ment roll. It requires no argument to show that
> such legislation would defeat the object of the elec-
> tive franchise, which is that every elector's franchise
> is of equal value to that of every other elector, and
> it would subvert the will of the people as expressed
> through the ballot."

While in the above cases the statute in question
was held unconstitutional, in *Attorney General, ex
rel. Reynolds,* v. *May* (1894), 99 Mich 538 (25 LRA
325), an act which permitted disabled persons, upon
taking an oath, to be assisted by an election inspector
in marking their ballot was upheld. The regulations
were stated to be to preserve the purity of elections.
"The law aims to secure secrecy in the ballot, and
does not attempt to disfranchise any voter". (p 547.)

Printing of the name of a candidate more than
once on a ballot as forbidden by statute was con-

sidered in the case of *Todd* v. *Boards of Election Commissioners* (1895), 104 Mich 474 (29 LRA 330). Plaintiff sought to have his name appear on more than one party ticket. The Court said (pp 487, 488):

"It does not deprive the members of those political parties of the means to put their coalition into effect by their votes, but furnishes all reasonable facilities for so doing. It only requires some degree of intelligence and care on the part of the voters. We hold the law to be constitutional."

A 1939 amendment to the 1908 Constitution for the first time provided for nonpartisan election of judges. In *Elliott* v. *Secretary of State* (1940), 295 Mich 245, plaintiff, a nominee for Justice of the Supreme Court, sought the rotation of the names of candidates on the ballot. This Court, in a PER CURIAM opinion, said (pp 249, 250):

"In determining the issue presented in the instant case it is of first importance to be mindful that the Constitution provides:

" 'Laws shall be passed to preserve the purity of elections and guard against abuses of the elective franchise.' Const 1908, art 3, § 8.

"It cannot be doubted that the adoption of the recent constitutional amendment, which changed the election of judicial officers from one on a partisan basis to one that is nonpartisan was prompted by the desire to make more effective the last above quoted constitutional provision. Therefore, everything reasonably necessary to be done by election officials to accomplish the purpose of the amendment is fairly within its purview. It is a commonly known and accepted fact that in an election, either primary or general, where a number of candidates or nominees for the same office are before the electorate, those whose names appear at the head of the list

have a distinct advantage. *Groesbeck* v. *Board of State Canvassers*, 251 Mich 286. It is not consistent with fairness or purity of elections or the avoidance of misuse of elective franchise for election officials to prepare ballots in such a condition as will afford one candidate or nominee an unfair advantage over rival candidates or nominees. Hence we think the conclusion is justified that, *even in the absence of specific constitutional* or statutory *provision, it is the clear duty of election officials, when reasonably possible, to prepare ballots in such a manner as will most effectively comply with the constitutional mandate touching the preservation of the purity of elections* and guarding against abuse or misuse of the elective franchise." (Emphasis added.)

In *Arvan* v. *Wayne County Clerk* (1968), see 381 Mich 761, PA 1967, No 108, and PA 1968, No 46,[3] provided that the names of incumbents be printed first on the ballot followed by the names of other candidates in alphabetical order. The circuit judge declared the provisions unconstitutional and ordered that the names of the candidates be rotated on the ballot. The Court of Appeals, Division 1 (J. H. GILLIS, J., dissenting), affirmed saying:

"Article 2, § 4 of the Constitution of 1963 provides in part:

" 'The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames.' "

---

[3] These statutes amend PA 1954, No 116, § 570 (MCLA § 168.570, Stat Ann 1969 Cum Supp § 6.1570).—REPORTER.

This Court, by order dated July 10, 1968, affirmed the circuit judge and the Court of Appeals. The pertinent portion of the Court's order reads:

"The ruling of unconstitutionality, and the respective judgments of the circuit court and Division 1 of the Court of Appeals, are affirmed on authority of *Elliott* v. *Secretary of State*, 295 Mich 245, 249, 250, and the purity of elections requirement of the Constitution of 1963, art 2, § 4."

From the above cases, it will be seen that the constitutional mandate to the legislature to enact laws to preserve the purity of elections has been interpreted by this Court to carry with it the corollary that any law enacted by the legislature which adversely affects the purity of elections is constitutionally infirm. The phrase, "purity of elections," is one of large dimensions. It has no single, precise meaning. The above cases demonstrate, however, that one of the primary goals of election procedures is to achieve equality of treatment for all candidates whose names appear upon the ballot. This principle appears not only in the cases but in the constitutional provision which permits designations in partisan elections *only for identification of candidates for the same office who have the same or similar surnames.*

The only other exception to the principle of equal treatment of candidates appears in judicial article 6, § 24, requiring that under the name of each elected incumbent justice or judge who is a candidate for nomination or election to the *same* office there shall be printed the designation of that office. In general, judicial office holding has been regarded as being in a somewhat different class from all other public office. There has been and continues to be serious debate as to whether or not judges, once in office, ought to be required to run for office at all, or ought

to be required only to run on their record. In any event, there is no challenge of unconstitutionality before us to this exception of incumbency designation appearing in the judicial article.

Should the exception in article 6, § 24, be extended so as to permit through action by the legislature the designation of a municipal judge upon the ballot in an election of judges of the new district courts?

In *Sullivan* v. *Secretary of State* (1964), 373 Mich 627, this Court granted a designation not provided for by statute to one of the candidates in a contest for the office of prosecuting attorney.

In *Buback* v. *Szymanski* (1968), (see 381 Mich 761), Norman J. Grubbs filed as a candidate for sheriff in Wayne county, stating that he was a candidate on the Republican ballot. He filed his affidavit and paid the statutory fee to become a candidate on the last day permitted for filing. Later the same day, he asked the county clerk to change his candidacy for sheriff from the Republican to the Democratic ballot and the county clerk so changed the affidavit. Roman S. Gribbs, the sheriff and a candidate on the Democratic ballot, then filed a request with the election commission for a designation on the ballot as "sheriff." In the litigation which followed, Grubbs appeared in the circuit judge's courtroom immediately before the matter was heard on a show cause order but then left and did not participate further in the case.

In *Evans* v. *City of Detroit Election Commission* (1968) (see 381 Mich 761), there were 10 candidates for a vacancy in recorder's court which was to be voted on at the primary election. Division 1 of the Court of Appeals determined that four of them should appear on the ballot as follows:

.

"919  Arthur J. Koscinski
     (former Judge of Recorder's Court)
"920  Raymond A. Kosinski
     (4439–30th Street)
"922  J. J. Murphy
     (19815 Asbury Park)
"923  John R. Murphy
     (former Judge of Recorder's Court)."

This Court affirmed the ruling of Division 1 on the authority of *Sullivan*.[4]

In the light of the facts disclosed in the above cases, any grant of a designation should be upheld only in the event it is clearly within those constitutional exceptions which permit such a designation or it aids in some way the purity of elections.

Candidates may undoubtedly be elected to office in many diverse fashions. In this State, however, except at a town meeting, the secret ballot is the almost universal method of conducting elections. Nothing appears on a ballot but the names of the candidates unless it be (1) party designations in partisan elections, (2) designations permitted to identify a candidate, or (3) designation due to the holding of judicial office. The importunity of party and friends, the appeals of the candidates, the din of the campaign—all these are left outside the election precincts. The campaigning is over. Now the voter is alone with a ballot, in secret, to exercise "some degree of intelligence and care" in the selection of those who govern. The election laws and the election cases decided by this Court all attest to this fact.

---

[4] See *Ballot Designations: Their Nature, Function, and Constitutionality*, by Maurice Kelman, 12 *Wayne Law Review* 756 (1966), for a discussion of how other states have handled the problem of bad faith candidacies by persons having the same or similar names (pp 761–764).

If it was proper for the legislature to forbid the printing of the name of a candidate more than once on a ballot (*Todd, supra*), if it was proper for this Court to strike down a plan for cumulative voting because such a plan would subvert the will of the people as expressed through the ballot (*Maynard, supra*), if it was proper for this Court to order that names of candidates be rotated upon the ballot in the interest of fairness and equal treatment to all candidates (*Elliott* and *Arvan, supra*), then surely the trial judge did not err in concluding that the primary effect of the designation as municipal judge is to grant advertising to a candidate. It affords him an unfair advantage in the very secrecy of the ballot. While the designation would tell an elector that a particular candidate for district court judge had a judicial background as municipal judge, there is no uniformity in such background among municipal judges. Some municipal courts are part-time affairs in small cities. Others are of much greater importance. Also the new court districts may be made up of a number of governmental units. In this case, 2 cities, 1 village and 8 townships make up the district. A justice of the peace with judicial background and experience, if running as a candidate for district judge, is not granted such a designation, nor is a judge of any other court who might be such a candidate. If the criterion for the ballot designation conferred by section 9923(3), as added by PA 1968, No 154, is judicial experience, this is an attempt by the legislature to place its own evaluation on the qualification of candidates for office. As such, it amounts to an abuse of the elective franchise and invades the elector's prerogative and duty to use his criteria in the selection of the candidate of his choice.

Finally, it should be noted that the constitutional designation is now granted to all incumbent judges. Plaintiff Wells was a stranger to the office of district judge. It is his situation only and the constitutionality of section 9923(3), as added by PA 1968, No 154, which we pass upon here.

The judgment of the trial court is affirmed. No costs, a public question being involved.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, and T. M. KAVANAGH, JJ., concurred with ADAMS, J.

BLACK, J., concurred in result.

T. G. KAVANAGH, J., took no part in the decision of this case.