Madrin HUFFMAN, et al., Appellants,

v.

CITY OF ARLINGTON, Appellee.

No. 18494.

Court of Civil Appeals of Texas, Fort Worth.

June 18, 1981.

Rehearing Denied July 16, 1981.

Hudman & Runzheimer, and Douglas R. Hudman, Henry E. Kerry, David B. Owen, Gerald Summerford, Fort Worth, for appellants.

McGinnis, Lochridge & Kilgore and Earnest C. Casstevens, Austin, for appellee.

HUGHES, Justice.

Madrin Huffman (County Clerk of Tarrant County) and a group of Tarrant County cities, independent school districts, Tarrant County Tax Appraisal District and some individuals have appealed from the judgment of the trial court declaring that the plan adopted by three-fourths of the taxing units of Tarrant County was not authorized by the Property Tax Code and was void. The City of Arlington had brought the suit for a declaratory judgment against all the taxing authorities of Tarrant County and Madrin Huffman. Some appealed. Some did not.

We affirm.

No findings of fact or conclusions of law were made in this case. Trial was to the judge without a jury. The essential facts are undisputed. We are concerned here with the interpretation of the Texas Property Tax Code, sec. 6.03(i) (Acts 1979, 66th Leg., p. 2224, ch. 841, sec. 1, eff. Jan. 1, 1980). The question to be decided is whether the resolution of the appellants (being three-fourths of the taxing authorities in the appraisal district) exceeded the authority granted by sec. 6.03(i).

Full text of sec. 6.03 is:

§ 6.03.  Board of Directors

(a) The appraisal district is governed by a board of five directors. To be eligible to serve on the board of directors, an individual must be a resident of the district and must have resided in the district for at least two years.

(b) Members of the board of directors serve two-year terms beginning on January 1 of even-numbered years.

(c) Members of the board of directors are appointed by vote of the governing bodies of the incorporated cities and towns and the school districts that participate in the district. A governing body may cumulate its votes by multiplying the number of votes to which it is entitled by this section by the number of directorships to be filled and by casting that total for one candidate or distributing it among candidates for any number of directorships.

(d) The voting entitlement of a taxing unit that is entitled to vote for directors is determined by dividing the total dollar amount of property taxes imposed in the district by the taxing unit for the preceding tax year by the sum of the total dollar amount of property taxes imposed in the district for that year by each taxing unit that is entitled to vote, by multiplying the quotient by 1,000, and by rounding the product to the nearest whole number. A taxing unit participating in two or more districts is entitled to vote in each district in which it participates, but only the taxes imposed in a district are used to calculate voting entitlement in that district.

(e) The county clerk shall calculate the number of votes to which each taxing unit is entitled and shall deliver written notice to the presiding officer of the governing body of each unit of its voting entitlement before October 1 of each odd-numbered year.

(f) Each taxing unit that is entitled to vote may nominate by resolution adopted by its governing body one candidate for each position to be filled on the board of directors. The presiding officer of the governing body of the unit shall submit the names of the unit's nominees to the county clerk before October 15. Before October 30, the county clerk shall prepare a ballot, listing the candidates alphabeti-

cally according to the first letter in each candidate's surname, and shall deliver a copy of the ballot to the presiding officer of the governing body of each taxing unit that is entitled to vote.

(g) The governing body of each taxing unit entitled to vote shall determine its vote by resolution and submit it to the county clerk before November 15. The county clerk shall count the votes, declare the five candidates who receive the largest cumulative vote totals elected, and submit the results before December 1 to the governing body of each taxing unit in the district and to the candidates.

(h) If a vacancy occurs on the board of directors, each taxing unit that is entitled to vote by this section may nominate by resolution adopted by its governing body a candidate to fill the vacancy. The unit shall submit the name of its nominee to the county clerk within 10 days after notification from the board of directors of the existence of the vacancy, and the county clerk shall prepare and deliver to the board of directors within the next five days a list of the nominees. The board of directors shall elect by majority vote of its members one of the nominees to fill the vacancy.

(i) The governing bodies of three-fourths of the taxing units that are entitled to vote on the appointment of members of a district's board of directors may change the number of members on the board of directors or may change the method of selecting members of the board of directors.

The undisputed facts reveal that three-fourths of the taxing units of Tarrant County adopted a plan to "change the method of selecting members of the board of directors" of the Tarrant County Tax Appraisal District. The whole of this lawsuit hinges in the phrase: "method of selecting." Arlington insists that sec. 6.03(i) of the Property Tax Code only allows alteration of the procedure by which substantive rights granted in secs. 6.03(c) and (d) are to

be exercised and cannot extend to diminution of those rights. Appellants contend that sec. 6.03(i) gave the "three-fourths majority" the authority to change the tax imposition voting entitlement basis provided in secs. 6.03(c) and (d).

The appellants' plan provided for a division of Tarrant County into five "sub-districts", with each of the taxing units being placed in a specific designated sub-district, having the right to vote on only one director—the one for that sub-district. This plan contrasts with that specified in sec. 6.03(c) which provides in part: "A governing body may *cumulate* its votes by multiplying the number of votes to which it is entitled by this section by the number of directorships to be filled and by casting that total for *one* candidate or distributing it among candidates for *any number* of directorships." (Emphasis ours.) Obviously, appellants' plan attempted to alter the option. Indeed, it attempted to abolish it and place Arlington where it could only vote on one director and dilute its voting strength. Under appellants' plan, Arlington would have one vote of sixteen for the directorship of the sub-district to which it was assigned.

Under sec. 6.03(d) Arlington would have 295 votes in 4425 (one to fifteen ratio) on all five directorships. Since it would require only 887 votes to elect a director in a five-man race, 295 votes would be a third of that requirement. Contrast this with the $\frac{1}{16}$th Arlington would have under the three-fourth's plan and we conclude a substantive change.

Of particular concern here are the phrases "voting entitlement of a taxing unit" as used in sec. 6.03(d) and "method of selecting members of the board of directors" in sec. 6.03(i). What was the legislative intent in those phrases?

It is apparent to us that the legislative intent in sec. 6.03(d) concerning "voting entitlement" was to set out in detail such entitlement in a clear and unmistakable formula:

$$\frac{\text{Total Taxes imposed (in District) by Taxing Unit}}{\text{Total Taxes imposed in District}} \times 1000 = \text{(rounded to nearest whole number)}$$

The formula is clear. Does the three-fourths majority have a right to change it under sec. 6.03(i)? The trial court held it did not and so do we.

The holding we make in this case is apparently one of first impression for Texas. The only Texas case defining "method" says: "The term 'method' is defined as 'a procedure or process for attaining an object' and as an 'orderly arrangement, development or classification.' The term is synonymous with the words 'mode,' 'plan,' 'design,' or 'system.' *Id.* Thus, the 'method' of performing an act refers to the *decision* or *plan* as to how the act is to be performed...." (Emphasis theirs.) *State v. Terrell*, 588 S.W.2d 784, 788 (Tex.1979).

Appellee also cited a foreign jurisdiction using the term "manner of electing directors" as applied to an insurance company board of directors. The New York court held that the power to provide for "manner" of electing directors only authorized the directors the manner of elections: When, whether terms of overlap, or whether elected individually or in groups. The court held that it did not authorize the directors to determine the qualifications of electors. *Lord v. Equitable Life Assur. Soc.*, 109 App.Div. 252, 96 N.Y.S. 10 (S.Ct.N.Y.1905).

Also, the Michigan Supreme Court dealt with the phrase "the manner of local elections" used in a constitutional amendment. *Coffin v. Board of Election Com'rs.*, 97 Mich. 188, 56 N.W. 567 (Mich.1893). Followed in *Wells v. Kent County Board of Election Com'rs.*, 382 Mich. 112, 168 N.W.2d 222 (Mich.1969). In both cases the Michigan court refused to enlarge the phrase to more than say that it "simply empowers the Legislature to provide the details for holding of such election."

We overrule points of error numbers one, two, three and four for the reasons stated.

Having examined points of error numbers five, six and seven in the light of our ruling on the first four points of error, we overrule all of them.

Affirmed.