# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 21, 2007

135274 & (36)(37)(40)(41)(42)

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

MARK L. GREBNER, BENTON L.
BILLINGS, LOTHAR S. KONIETZKO,
AUBREY D. MARRON, JOSEPH S.
TUCHINSKY, HUGH C. McDIARMID,
BERL N. SCHWARTZ, and PRACTICAL
POLITICAL CONSULTING, INC.,
        Plaintiffs-Appellees,

v

STATE OF MICHIGAN and SECRETARY
OF STATE,
        Defendants-Appellants.

SC: 135274
COA: 281814
Ingham CC: 07-001507-CZ

_____/

On order of the Court, the motions for immediate consideration and to file briefs amicus curiae are GRANTED. The application for leave to appeal the November 16, 2007 judgment of the Court of Appeals is considered and, pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals, generally for the reasons stated in the Court of Appeals dissenting opinion, and we REMAND this case to the Ingham Circuit Court for entry of an order denying the plaintiffs' motions and dismissing the complaint. The motion for stay is DENIED as moot.

(A) The issue here is whether MCL 168.615c, which was enacted by the Legislature with a vote of less than two-thirds of the members of each house, violates Const 1963, art 4, § 30.

(B) MCL 168.615c provides, in pertinent part:

(1) In order to vote at a presidential primary, an elector shall indicate in writing, on a form prescribed by the secretary of state, which participating political party ballot he or she wishes to vote when appearing to vote at a presidential primary.

\* \* \*

(3) The secretary of state shall develop a procedure for city and township clerks to use when keeping a separate record at a presidential primary that contains the printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by that elector at the presidential primary.

\* \* \*

(5) To ensure compliance with the state and national political party rules of each participating political party and this section, the records described in subsection (3) shall be provided to the chairperson of each participating political party as set forth in subsection (6).

\* \* \*

(8) A participating political party may only use the information transmitted to the participating political party under subsection (6) to support political party activities by that participating political party, including, but not limited to, support for or opposition to candidates and ballot proposals.

(C) Const 1963, art 4, § 30 provides: "The assent of two-thirds of the members elected to and serving in each house of the legislature shall be required for the appropriation of public money or public property for local or private purposes."

(D) This Court "must presume a statute is constitutional and construe it as such, unless the only proper construction renders the statute unconstitutional." *In re Petition by Wayne Co Treasurer*, 478 Mich 1, 9 (2007).

(E) If an appropriation predominantly serves a public purpose, it is not an appropriation for a private purpose. *Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2-10),* 396 Mich 465, 496 (1976). "The fact that certain individuals benefit from the appropriation does not necessarily imply that the appropriation is lacking a public purpose. The question is whether society at large has an interest in having those individuals benefited." *Id.*

(F) Because "the determination of what constitutes a public purpose for which an appropriation of public money may be made is primarily the responsibility of the Legislature," *id.* at 495-496, considerable deference is owed to the Legislature's determination. *Baker v Carr*, 369 US 186, 217 (1962). "[D]etermination of what constitutes a public purpose involves consideration of economic and social philosophies

and principles of political science and government. Such determinations should be made by the elected representatives of the people." *Gregory Marina, Inc v Detroit*, 378 Mich 364, 394 (1966).

(G) Political parties unquestionably serve a public purpose. As the United States Supreme Court explained, "parties and their representatives have become the custodians of official power . . . ; and that if heed is to be given to the realities of political life, they are now agencies of the state, the instruments by which government becomes a living thing." *Nixon v Condon,* 286 US 73, 84 (1932). See also generally *Smith v Allwright*, 321 US 649 (1944), and *Terry v Adams*, 345 US 461 (1953), on the uniquely "public functions" carried out by political parties within the electoral process.

(H) As a consequence of MCL 168.615c, the political parties are given access to certain information gathered at public expense in order to support or oppose candidates and ballot proposals. The debate engendered as the result of that access is integral to the operation of our democracy, our electoral process, and our political campaigns and thus serves a public purpose by "enlighten[ing] the public and encourag[ing] an informed decision-making process." *Advisory Opinion*, *supra* at 494. "Discussion of public issues and debate on the qualification of candidates are integral to the operation of the system of government established by our constitution." *Buckley v Valeo*, 424 US 1, 14 (1976).

(I) Whether there are better means of serving these same interests, and whether the costs of permitting that access are warranted in light of their benefits, are principally matters for legislative, not judicial, determination. "[I]t is well within the legislature's powers to so determine." *Advisory Opinion*, *supra* at 497.

(J) We respectfully disagree with the Court of Appeals majority that the public purpose served here is merely "incidental[]." Instead, the "predominant" role that political parties serve in our system of government is informing the public about candidates and ballot proposals and facilitating public debate in the context of such candidates and ballot proposals. This is indisputably a "public purpose" and such purpose appears central to the legislative judgment. Indeed, it is hard to comprehend what alternative purpose the Legislature might have contemplated in enacting MCL 168.615c.

(K) The consideration and balancing of "public" and "private" interests in this case do not require that this Court construe these or any other terms in a "broad" or "narrow" manner, as asserted by the Court of Appeals dissent. Rather, such terms need only be interpreted in a reasonable manner.

(L) For the reasons discussed above, MCL 168.615c does not violate Const 1963, art 4, § 30.

(M) In addition, MCL 168.615c is not violative of Const 1963, art 2, § 4, which provides, in part: "The legislature shall enact laws to preserve the purity of elections . . . ." Plaintiffs argue that § 615c violates the Purity of Elections Clause because only the two major political parties, having each received "20% of the total vote cast in this state for the office of president in the last presidential election," MCL 168.613a(3), at present qualify to obtain the information gathered under this act. However, as the United States Supreme Court has recognized, "the States' interest permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system . . . ." *Timmons v Twin Cities Area New Party,* 520 US 351, 367 (1997). States have a "strong interest" in the stability of their political systems and, while they may not enact "unreasonably exclusionary restrictions," they "need not remove all of the many hurdles third parties face in the American political arena today." *Id*. See also *Buckley, supra* at 97-98. Further, it may conceivably be argued that MCL 168.615c, in fact, "preserve[s] the purity of elections" by preventing so-called "party raiding" "whereby voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary," *Rosario v Rockefeller*, 410 US 752, 760 (1973).

(N) We agree with plaintiffs that there is standing and that the issues are ripe. Plaintiff Practical Political Consulting is a political consulting firm whose business will be directly affected by the fact that, pursuant to MCL 168.615c, a part of the market research for the two major political parties will be provided to the parties by the state, and, thus, this plaintiff has standing to challenge § 615c. In addition, the challenges to this law are ripe because § 615c has been enacted without the assent of two-thirds of both houses, and if § 615c violates Const 1963, art 4, § 30, the state cannot conduct the January 15, 2008, presidential primary election because of the nonseverability provision of 2007 PA 52, enacting § 1.

(O) This order addresses only the question whether MCL 168.615c violates Const 1963, art 2, § 4 and art 4, § 30, the only issues addressed by the lower courts. In particular, this order does not address the validity of MCL 168.615c under any other provision of the federal or state constitutions, and it does not address whether MCL 168.615c is inconsistent with any other provision of federal or state law.

CAVANAGH, J., dissents and states as follows:

I would deny leave to appeal because:

A. There is no express public purpose for the granting of access to the lists. MCL 168.615c states two purposes for the list provision: (1) to ensure compliance with the state and national political party rules and (2) to support political party activities by that participating political party. MCL 168.615c(5) and (8). Neither purpose has any relation to the public interest. The express purposes apply exclusively to the political

parties, which are concededly private entities. While political parties undoubtedly serve a public purpose, as do many private entities, the question here is whether this public appropriation serves a public interest.

It is possible that an incidental benefit would accrue to the public if "support for or opposition to candidates and ballot proposals," MCL 168.615c(8), leads to public discussion or exchange of ideas, as the Court of Appeals dissent assumes it will. But nothing in the statute ensures this result. Support could take the exclusive form of financial support. Discourse, if there were any, could be entirely within the particular party. There is simply no express benefit to the public.

B. Speculation that a benefit may trickle down to the public is not enough. The Court of Appeals dissent asserts that *Advisory Opinion on Constitutionality of 1975 PA 277 (Questions 2 – 10)*, 396 Mich 465 (1976), "appears" to stand for the proposition that any public purpose is sufficient for a constitutional appropriation. I believe that this is a misstatement. *Advisory Opinion* actually states that "[t]he question is whether society at large has an interest in having those individuals benefited." 396 Mich at 496. I read this as a primary purpose test.

*Advisory Opinion* does not stand for the proposition that any attendant public benefit amounts to a public purpose; the benefit must be one that is closely and clearly related to the welfare of the public to amount to a public purpose. The goals of MCL 168.615c are closely and clearly related to the welfare of the qualifying political parties. Any benefit to the public is speculative at worst and attenuated at best.

C. The "any public purpose" test of the Court of Appeals dissent is unworkable and dangerous. If any slight public benefit is sufficient, as the dissent would have it, the distinction between public and private purpose loses all meaning. As the Court of Appeals majority observes, appropriating property and funds for a shopping mall involves some public benefit, if only in increased tax revenues. Adopting the Court of Appeals dissent's translation of the public purpose test invites bad consequences for Michigan citizens in the future.

D. The purposes of MCL 168.615c are inapposite, arguably inimical, to those in the cases on which the dissent relies. The legislation at issue in *Buckley v Valeo*, 424 US 1, 91 (1976), public presidential campaign funding, had a public purpose "to reduce the deleterious influence of large contributions on our political process . . . ." The legislation at issue in *Advisory Opinion*, public gubernatorial campaign funding, had a public purpose "[t]o allow gubernatorial candidates to become less dependent upon financial support from special-interest groups . . . ." 396 Mich at 497. So both had a purpose to mitigate the influence of highly funded private entities or special interest groups.

The effect of MCL 168.615c appears to be the opposite. It enables increased funding and influence in particular groups. Significantly, this influence and funding benefit is not just in the parties themselves; the list may be provided to "another person, organization, or vendor for the purpose of supporting political party activities by that participating political party," in other words, special interest groups. MCL 168.615c(8). The fact that MCL 168.615c directly benefits not only the parties but unnamed subgroups somehow loosely connected to the "political party activities" drives a stake through the heart of any attenuated public purpose as far as I am concerned.

E. Plaintiffs' contention that the act implicates the "purity of elections" is not wholly without merit. Const 1963, art 2, § 4 states in part: "The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, [and] to guard against abuses of the elective franchise . . . ." The "purity of elections" clause has been interpreted by this Court to require that "'any law enacted by the Legislature which adversely affects the purity of elections is constitutionally infirm.'" *Socialist Workers Party v Secretary of State*, 412 Mich 571, 596 (1982), quoting *Wells v Kent Co Board of Election Comm'rs*, 382 Mich 112, 123 (1969). "The phrase, 'purity of elections,' is one of large dimensions. It has no single, precise meaning." *Wells*, supra at 123. "Although the 'purity of elections' concept has been applied in different factual settings, it unmistakably requires . . . fairness and evenhandedness in the election laws of this state." *Socialist Workers*, supra at 598. "The touchstone [of Const 1963, art 2, § 4] is whether the election procedure created affords an unfair advantage to one party or its candidates over a rival party or its candidates." *Id.* at 598-599.

Arguably, supplying a list of voters to secondary vendors of political parties adversely affects the purity of elections and creates an unfair advantage. Further, it is not clear to me that the general reasonableness of favoring the two-party system for the stability of elections applies when the purported good, as the Court of Appeals dissent suggests, is "'to assure the unfettered exchange of ideas for the bringing about of political and social changes desired by the people . . . .'" *Monitor Patriot Co v Roy*, 401 US 265, 272 (1971) (citation omitted).

Finally, the very idea of supplying lists of voters to private parties, when the voters must either be on the list or not vote, strikes me as an abuse of the elective franchise.

For these reasons, I would deny leave to appeal.

KELLY, J., joins the statement of CAVANAGH, J.

WEAVER, J., dissents and states as follows:

I dissent from the majority of four's (Chief Justice Taylor, and Justices Corrigan, Young, and Markman) order reversing the Court of Appeals majority opinion and generally adopting the flawed dissent. Justice Cavanagh's dissent has correctly explained some of the flaws of this Court's majority of four's mistaken decision and reasoning.

I would deny leave to appeal because the Court of Appeals correctly held that 2007 PA 52 is unconstitutional because it violates the Michigan Constitution by appropriating public property for private purposes without the assent of "two-thirds of the members elected to and serving in each house of the legislature." Const 1963, art 4, § 30.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 21, 2007

_____

Clerk

t1120