THOMAS MADY *vs.* HOLY TRINITY ROMAN CATHOLIC POLISH CHURCH.

Bristol. October 26, 1915. — February 12, 1916.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* Implied in law. *Religious Society. Evidence,* Matters of common knowledge. *Practice, Civil,* Judge's charge. *Jury and Jurors.*

Where a religious corporation, whose trustees voted to dispense with the services of its priest, thereafter for more than a year accepted such services which he continued to perform, it can be found to be liable to pay for the services.

At the trial of an action against a religious corporation, calling itself Roman Catholic and seeking to be accepted by the Roman Catholic Church but not so accepted, to recover compensation for services performed as a priest after the trustees of the defendant had voted to dispense with his services, where there has been no evidence in regard to the polity or laws governing the Roman Catholic Church, it is error for the presiding judge in instructing the jury to say to them, "No doubt it would have been the duty under the polity of the Roman Catholic Church for him [the plaintiff] to stay there until his successor was brought there," and to say further, "So far as the matter of the church polity of the Catholic Church is concerned, you are to use it no further than you have a common knowledge of it. Whether according to that a priest is expected to stay there until he is discharged, not by the parish, not by the church, but by some authority higher than the church, is for you, and if you have not any common knowledge about it, why, you are not to use any knowledge about it."

The polity or mode of government of the Roman Catholic Church is not a matter of common knowledge.

While a juror properly may apply his general knowledge and experience to the subject of inquiry and in determining the weight and credibility of the evidence, he is not permitted to act upon his private knowledge of particular facts which are not matters of common knowledge.

CONTRACT against the Holy Trinity Roman Catholic Polish Church, a religious corporation conducting worship in the city of Fall River, for $1,500 alleged to be due to the plaintiff for services as priest and for disbursements. Writ dated March 17, 1914.

In the Superior Court the case was tried before *White,* J.   The evidence is described in the opinion.   At the close of the evidence the defendant, among other requests, asked the judge to make the following rulings:

"6. That after the plaintiff knew the defendant would not pay him, no implied promise to pay could exist.

"7. The plaintiff must reasonably have expected that the defendant would pay him in order to create an implied promise to pay.

"8. The defendant was not obliged to put the plaintiff off its property bodily to prevent an implied contract to pay him from forming.

"9. In order that the plaintiff may recover for services upon an implied contract from November, 1912, to the time of his leaving, he must show that his services were those of a Christian priest."

The judge refused to make these rulings.   The jury returned a verdict for the plaintiff in the sum of $1,385; and the defendant alleged exceptions, including an exception to the portion of the judge's charge which is quoted in the opinion.

*J. A. Kerns,* for the defendant.

*D. R. Radovsky,* for the plaintiff.

CROSBY, J.   This is an action of contract to recover for services alleged to have been rendered as priest of the defendant's church in Fall River from September, 1911, to February 3, 1914.   The plaintiff admits that he was paid in full for his services to June 1, 1912.

The auditor finds that when the plaintiff began to render services in September, 1911, "he made no claim for compensation as salary, but asked the parish to supply him with a church and an altar and his keep."   The auditor also finds that later a committee of the parish called upon him and it was arranged that he should receive $50 a month and the use of a house, heated, lighted and furnished; that subsequently, in the autumn of 1911, a housekeeper was engaged to care for the parish residence, and the compensation of the plaintiff was made $66.66 a month, from which the wages of the housekeeper, $20 a month, were to be paid by the plaintiff.

There was evidence to show that on November 19, 1912, a meet-

ing of the trustees of the defendant corporation was held, at which meeting it was voted in effect that the plaintiff's services were no longer desired. Aside from the legality of the call for this meeting or the validity of the vote passed, it was in substance an attempt to dismiss the plaintiff from further service as priest of the parish. At a meeting of the parish held on December 5, 1912, a similar vote was passed, and there was evidence that the plaintiff knew of both of these votes. The plaintiff continued to occupy the rectory of the church and offered evidence to show that he continued to perform the functions of priest as formerly until February, 1914.

The defendant contended that the plaintiff and the defendant were engaged in a common purpose in establishing a church and seeking to have it included within the jurisdiction of the Roman Catholic Church, and that the plaintiff would not ask compensation for his services until the desired object had been accomplished. The plaintiff denied that he was to serve without compensation. The defendant also contended that, after the votes of the trustees and of the parish above referred to had been passed, any liability to pay the plaintiff for future services was terminated.

The auditor finds that "It was desired by the trustees and the people of the parish that their church should receive the sanction of the Catholic Church of Fall River," and that "the Bishop refused to accept their proposals or take over the church."

The questions whether any binding contract had been entered into by the parties and, if so, whether it had been terminated by the defendant, and, if terminated, whether the defendant thereafter accepted the plaintiff's services upon an implied understanding that he should be paid therefor, were properly submitted to the jury upon the findings of the auditor and upon the other evidence.

The defendant's sixth request could not have been given because, if the defendant accepted the services of the plaintiff after he had been notified in November and December, 1912, that such services were no longer required, it would be liable upon an implied promise to pay, and the presiding judge so instructed the jury. The seventh and eighth requests were sufficiently covered in the charge. The ninth request could not have been given, as there was evidence that the plaintiff had been ordained as a priest

and there was no evidence to the contrary; besides he had acted in that capacity in the defendant's parish from September, 1911, to February, 1912, without any question having been raised as to his qualifications.

The judge instructed the jury in part as follows: "No doubt it would have been the duty under the polity of the Roman Catholic Church for him [the plaintiff] to stay there until his successor was brought there." The defendant excepted to this part of the charge "for the reason that it does not appear that that is the doctrine of the Roman Catholic Church." The judge then further instructed the jury in part as follows: "So far as the matter of the church polity of the Catholic Church is concerned, you are to use it no further than you have a common knowledge of it. Whether according to that a priest is expected to stay there until he is discharged not by the parish, not by the church, but by some authority higher than the church, is for you, and if you have not any common knowledge about it, why, you are not to use any knowledge about it."

We are of opinion that the polity of the Roman Catholic Church is not a matter of common knowledge, and that the jurors properly could not have been permitted to take into account their knowledge upon the subject, if they had any, in determining the question whether the defendant had authority to dismisss the plaintiff in November or December, 1912. Undoubtedly jurors properly may take cognizance of facts that are generally regarded as forming a part of the common knowledge of all persons of ordinary understanding and intelligence. *Commonwealth* v. *Peckham,* 2 Gray, 514. *Commonwealth* v. *Marzynski,* 149 Mass. 68, 72. *Commonwealth* v. *Pear,* 183 Mass. 242, 246. Facts which ordinarily are not known without the aid of expert testimony or other proof cannot be said to be matters of common knowledge. No testimony was offered at the trial to show the polity or laws governing the Roman Catholic Church, but the jury were allowed to act upon such polity in the absence of any evidence upon that subject.

According to the general practice of the courts in most, if not all, jurisdictions, proof is required upon the subject of church polity or government whenever that subject has arisen. It is also held that the civil rights and duties of a religious denomina-

tion are not matters of common knowledge. Courts cannot take judicial notice of laws governing churches, or of the nature and powers or the civil rights and obligations of religious organizations. *Baxter* v. *McDonnell,* 155 N. Y. 83. *Katzer* v. *Milwaukee,* 104 Wis. 16. *Hill Estate Co.* v. *Whittlesey,* 21 Wash. 142. *Beckwith* v. *McBride & Co.* 70 Ga. 642.

While a juror properly may apply his general knowledge and experience in regard to the general subject of inquiry and in determining the weight and credibility of the evidence, he is not permitted to act upon his private knowledge of particular facts which are not a matter of common knowledge or observation. *Schmidt* v. *New York Union Mutual Fire Ins. Co.* 1 Gray, 529.

The defendant corporation undoubtedly was organized as a religious association to be conducted as a Roman Catholic Church. Still it had not received the sanction of the bishop of the diocese, and he had refused it admission under the jurisdiction of the church. Under these circumstances it would seem that the defendant was not governed by the polity or laws of the church, or necessarily controlled by its rules.

As the polity of the Roman Catholic Church is not a matter of common knowledge and so properly could not have been passed upon by the jury, the entry must be

*Exceptions sustained.*