MANUEL DUARTE & another, petitioners.

Bristol.    October 25, 1954. — November 30, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Evidence*, Judicial notice, Matter of common knowledge. *Probate Court*, Rehearing.

In a proceeding after the enactment of G. L. (Ter. Ed.) c. 210, § 5B, inserted by St. 1950, c. 737, § 3, for adoption of a child of tender years by petitioners of a religious faith different from that of the child, the judge was in error in taking judicial notice that in the community "there are pending many applications for placements of children of . . . [the faith of the child] in homes that can supply both the necessary physical and spiritual requirements where this child can be placed for adoption," and in using the fact so noticed as the basis for a conclusion that it would not be "practicable" to give custody to the petitioners and for a decree dismissing the petition. [749]

Where the evidence was not reported on an appeal from a decree of a Probate Court dismissing a petition for adoption and containing findings of facts showing that a decisive conclusion reached by the judge was tainted by error of law and could not stand, the decree was reversed and the case remanded to the Probate Court for further consideration. [750]

PETITION, filed in the Probate Court for the county of Bristol on July 3, 1952.

The case was heard by *Considine*, J.

*Joseph Lipsitt*, (*Paul D. Lipsitt* with him,) for the petitioners.

SPALDING, J.    This is a petition for the adoption of Leonard James Gregorie, otherwise known as Leonard James Mello.    The petitioners are Manuel Duarte and his wife. At the time of the filing of the petition the child, according to the allegations of the petition, was approximately eleven months old.    The mother of the child has signed the petition consenting to the adoption as therein prayed for, and her consent has been attested before a notary public.    G. L. (Ter. Ed.) c. 210, § 2, as appearing in St. 1950, c. 737, § 1.[1] There was no appearance in opposition to the petition.

---

[1] Notice was given to the child's father but he did not appear and object to the adoption.    See G. L. (Ter. Ed.) c. 210, § 5.

The judge made findings of facts and, although unusual in this Commonwealth, these were included in the decree. *Schuka* v. *Bagocius*, 294 Mass. 597, 600. *Smith* v. *Smith*, 222 Mass. 102, 103. From these findings the following appears. The father and mother of the child are Catholics, and the child was baptized in that faith. The petitioners are Seventh Day Adventists, and intend, if the adoption is allowed, to raise the child in that faith. The judge then concluded: "While it appears that the physical needs of this child, such as food, clothing and housing can adequately be supplied by the petitioners, it likewise appears that the spiritual requirement of the natural mother's religious belief will be absolutely neglected and ignored, and since this court is taking judicial notice of the facts brought to its attention, that in this predominantly Catholic community, there are pending many applications for placements of children of the Catholic faith in homes that can supply both the necessary physical and spiritual requirements where this child can be placed for adoption, and in view of all the circumstances, it would not be 'practicable' in this instance, to give custody to persons of a different religious faith than that of the child. It is therefore decreed that this petition be dismissed." From this decree the petitioners appealed. The evidence is not reported.

The decision of the judge obviously was based on the provisions of G. L. (Ter. Ed.) c. 210, § 5B, inserted by St. 1950, c. 737, § 3.[1] See *Gally, petitioner*, 329 Mass. 143; *Goldman, petitioner, ante*, 647. The petitioners attack the decree on the ground that it was founded on matters as to which evidence was lacking and of which the judge erroneously took judicial notice. We are of opinion that this contention must be sustained. In the circumstances it makes no

---

[1] "In making orders for adoption, the judge when practicable must give custody only to persons of the same religious faith as that of the child. In the event that there is a dispute as to the religion of said child, its religion shall be deemed to be that of its mother. If the court, with due regard for the religion of the child, shall nevertheless grant the petition for adoption of a child proffered by a person or persons of a religious faith or persuasion other than that of the child, the court shall state the facts which impelled it to make such a disposition and such statement shall be made part of the minutes of the proceedings."

difference whether the findings of the judge be treated as findings of all material facts (*Topor* v. *Topor*, 287 Mass. 473, 476) or of something less (*Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561–562), for enough appears to show that the ultimate conclusion reached by the judge was tainted by error of law and cannot stand.

The judge judicially noticed that "there are pending many applications for placements of children of the Catholic faith in homes that can supply both the necessary physical and spiritual requirements where this child can be placed for adoption." Plainly these facts were not matters of common knowledge of which the court could take judicial notice and use as the basis of a conclusion that an adoption of the child by the petitioners, because of their different religion, was not "practicable."

In the very recent case of *Goldman, petitioner, ante*, 647, we upheld the decision of a judge of probate that an adoption by persons whose religion differed from that of the children to be adopted was not for the best interests of the children and that it was "practicable" to give custody only to persons of the same faith as the children. But the judge in that case made detailed findings on the issue of practicability which were based on evidence in the case. This evidence included testimony "from persons connected with Catholic charities as to many applications to adopt Catholic children by Catholic couples who had been investigated and found in good financial condition with good homes, 'who . . . [were] ready and willing to adopt these two children' " (page 650). There was no such evidence in the case at bar. Conceivably the judge below may have had personal knowledge of the facts judicially noticed by him; but he could not use it. As Professor Wigmore has said, "It is . . . plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows *only as an individual* observer outside of court. . . . Where to draw the line between knowledge by notoriety and knowledge by personal observation may sometimes be difficult, but the principle is plain." Wigmore

on Evidence (3d ed.) § 2569. See *Mady* v. *Holy Trinity Roman Catholic Polish Church,* 223 Mass. 23, 27. In the case at bar the line was drawn at the wrong place.

It remains to consider what disposition should be made of the case. In *Gally, petitioner,* 329 Mass. 143, we reversed the decree denying adoption on the ground that the judge erred in determining the issue of practicability under § 5B, and we ordered the entry of a new decree allowing the adoption as prayed for. But that case came here on the evidence, all of which was documentary, so that we were in as good a position to decide the case as was the trial judge. But that is not the case here. The findings of the judge strongly suggest that, apart from the issue of practicability under § 5B, he considered the petitioners to be suitable persons to have custody of the child. But of that we cannot be sure. Accordingly the decree is reversed and the case is remanded to the Probate Court for further consideration not inconsistent with the opinion.

*So ordered.*