SCHELL, CONTESTOR, *v.* STUDEBAKER, CONTESTEE.

Common Pleas Court, Montgomery County.

No. 118255. Decided December 22, 1960.

138

*Mr. Eugene A. Jablinski*, for contestor.
*Messrs. Scharrer & Porter*, for contestee.

McBRIDE, J.   The plaintiff, Robert L. Schell, filed this action as one of the defeated candidates for the office of County Commissioner of Montgomery County in the November 8, 1960 election.   Four were nominated and two were to be selected at the general election.   The plaintiff alleges that his name appeared in the first position on the ballot in 88 precincts while the names of other candidates (not identified) appeared in that position in 133 precincts.   For this, and no other reasons alleged, the plaintiff requests that the election be declared void as to all candidates for the office of County Commissioner.

To this petition the defendant, Dale Studebaker, one of the two successful candidates, filed a demurrer, saying in effect that the plaintiff has no legal right to the relief requested.

Article 5, Section 2a, approved by the voters in 1949, provides:

"The names of all candidates for *an office* at any general election *shall be arranged in a group under the title of that office*, and shall be so alternated that each name shall appear (*in so far as may be reasonably possible*) *substantially an equal*

*number of times* at the beginning, at the end, and in each intermediate place, if any, of the group in which such name belongs. * * *'' (Emphasis by the court.)

It will be noted that the Constitution requires "substantial" compliance and that the parenthetical expression—"in so far as may be reasonably possible"—assumes an importance as a further modification of substantial compliance.

In *Russell* v. *Bliss*, 156 Ohio St., 147, this section of the Constitution was declared to be self-executing, requiring no supplementation by the legislature. This was repeated in *State, ex rel.* v. *Board of Elections of Hamilton County* (10-21-59), 170 Ohio St., 30, in which Section 4785-80, General Code, was declared unconstitutional. The attempt of the legislature to adopt a standard rotation for all offices consistent with the number of candidates for any one office was held unconstitutional. The amendment to Section 3507.07, Revised Code, experienced the same fate because it provided for rotation by party only even though the number of candidates from each party was not equal or was changed by the presence of an independent candidate.

It should be observed that in two foregoing cases the action in mandamus *before* the election to require compliance with the constitutional provision for *individual* rotation for *each* office was successful.

What is the experience where there are printing irregularities which are not corrected before the election? The test is whether the voters were misled; whether the candidate was prompt in pointing out irregularities he could have corrected; and whether the arrangement of names was *substantially* equal in so far as may be *reasonably possible*. What is reasonably possible before an election may differ from that which may be devised after an election. The Monday morning quarterbacks are always in a position to help after it is too late.

In *Moore* v. *Thompson*, 161 Ohio St., 339, there were several irregularities, including the description of the office. In that case the court said:

"The appellants, having raised no objection to the form or insufficiency of the official ballot before the election, although proofs thereof were available to them, cannot, after the election

and the determination of its result, be heard to attack the validity of the election or insufficiency in the form of the ballot.

" 'Strictly speaking, all provisions of the election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview, but irregularities, which were not caused by fraud and which have not interfered with a full and fair expression of the voters' choice, should not effect a disfranchisement of the voters.' *Mehling* v. *Moorehead,* 133 Ohio St., 395, 406, 14 N. E. (2d), 15."

Mahoning County experienced a situation in 1952 very similar to that presently before this court. *Bees* v. *Gilronon* (CP), 66 Ohio Law Abs., 130, dismissed by the Ohio State Supreme Court for other reasons, 159 Ohio St., 186. In Mahoning County two out of four candidates were to be elected for the office of County Commissioner. Both types of ballots were used. Bees, who was last in the total vote, was second if only paper ballot precincts were considered. Bees claimed that the ballots on the machines were void and asked the court to declare his election to the office or, in the alternative, to set the election aside. It appears that on the machines the four names appeared in two columns. Candidate Bees appeared in the top left position on 17.8 percent of the ballot forms, in the two lower positions on 82.2 percent, and not at all in the top right position. Further, it appeared that while the statute required rotation by precincts, this was not done in 56 precincts where additional voting machines were supplied to meet the requirements of a late increase in voters in those precincts. In this latter situation one can readily recognize the importance of the constitutional provision for conditions when equal arrangement is not reasonably possible in order to meet the greater right of all citizens to vote, irrespective of the advance arrangements for rotation.

We now join Judge Jenkins of the Common Pleas Court of Mahoning County as he discusses the very same question we have here in Montgomery County.

"Coming to the failure, in printing the ballot forms for the machines, to secure an alternation in regular sequence so that each candidate's name would appear a substantially equal number of times in each position, this, due to lack of official super-

vision of the work of the printer, was a grave irregularity. People being what they are, there is 'something in a name,' and the people, believing that a psychological advantage accrues to a name by its position on a ballot, provided that this believed advantage should be shared among the candidates and stated how 'in so far as reasonably possible' it should be done. Candidate Bees equally with each of the others was entitled to whatever advantage substantially equal rotation of position would give.

"There is no evidence of fraud in this case; no evidence of any purposeful design on the part of anyone to manipulate the alternation of ballot forms; just plain oversight or failure in providing direction in the sequential printing of the forms. An irregularity in the performance of their duties, by election officials, if a matter of substance, if it fails to give to all electors alike an opportunity to express themselves freely in their choice, would vitiate an election. Where the honesty of the ballots cast is not in question, where all the voters have an opportunity to give a free and fair expression of their will, and where the actual result thereof is clearly ascertained, a procedural neglect by election officials will not justify the rejection of such votes. Here the votes of 59,275 legal electors are affected and their disfranchisement is in issue.

"A procedural irregularity being evident, and every vote on the instrumentalities provided being honestly cast, the question then is: were all the voters alike by the use of these ballot forms able to give a free expression of choice? It is clear that whatever the arrangement of the. names of the four commissioner candidates with respect to each other was on the ballot form provided, whether paper or machine, the individual voter had to look for the individual names of the two candidates of his choice and vote for each of them individually. If he wanted to vote for a candidate of his party regardless of name he would have to look more closely, because the constitution requires the party named to be printed under the candidate's name 'in lighter and smaller type face.' That this was the deliberate purpose and clearly expressed intent of the people when they adopted the office ballot system is shown in the language used in Article V, Sec. 2a, which has not hereinbefore been quoted:

" 'An elector may vote for candidates only and in no other way than by indicating his vote for each candidate separately from the indication of his vote for any other candidate.'

"The constitution intended him to search for the name of the candidate of his choice and to express his choice for that one without regard to any one else on the ballot. It assumed his ability to read and his intelligence to indicate his choice wherever the name appeared on the ballot independently of any other candidate. Every single vote in Mahoning County by paper or machine ballot had the opportunity of this free choice."

Judge Jenkins concluded on a note of caution to election officials:

"The irregularity in failure to carry out the rotation 'in so far as reasonably possible,'—because it was reasonably possible to provide supervision which would bring about the substantial equality in positions—was not then a matter of substance requiring the setting aside of the election. The action of the law in so saying must not be taken as condoning in the least the irregularity shown or as failing to warn against its repetition by all election officials from the secretary of state down."

The foregoing construction represents the current law of Ohio. Until it is modified or reversed by the Supreme Court a trial judge must be guided by the traditional rule of non-interference by the judiciary in the results of an otherwise fair and free political contest, providing—of course—there is no claim of fraud.

In the instant case there is no allegation of fraud. In fact there is no allegation that the defendant received any more first place positions on the ballot than the plaintiff. In other words, as between the two parties to this lawsuit there is no inference or allegation that the results of the election would have been any different.

The ratio of the "favorite" or of the first positions on the ballots in this case was not based equally upon the number of candidates for the office of County Commissioner as required by the Constitution. The court may only surmise that the ratio for the arrangement was based upon that of some other office or offices in which there were a larger number of candidates, such

as for state representatives. The use of some other office for the arrangement of names is not permitted by the Constitution and is subject to correction by mandamus before the election. The statute authorizing the method apparently used here was held unconstitutional.

The demurrer of the defendant is sustained.

In view of this ruling there is no reason to discuss the question of proper parties in a case of this character involving, as it does, other interested parties who are not named or joined. Obviously the relief requested would involve other candidates who participated in the contest for the election of commissioners.