Robert E. MANN and Bernard Weisberg, Plaintiffs,

v.

Paul POWELL, individually and as Secretary of State of the State of Illinois, et al., Defendants.

No. 69 C 2235.

United States District Court, N. D. Illinois, E. D.

Dec. 30, 1969.

See also D.C., 314 F.Supp. 677.

---

Joel J. Sprayregen, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., State of Illinois, John Galvin, Chicago, Ill., John E. Cassidy, Sp. Asst. Atty. Gen., Peoria, Ill., for defendants.

Before SWYGERT, Circuit Judge, and PARSONS and DECKER, District Judges.

## MEMORANDUM OPINION AND FINAL ORDER

### PER CURIAM.

In a primary election to be held on March 17, 1970, Illinois voters will select party candidates for Congress and the Illinois General Assembly, as well as for various other state and local offices. Nominating petitions were received by the Secretary of State during the week of December 8th to 15th, 1969. This suit asks us to declare unconstitutional Illinois Public Act 76–1964, which empowers the Secretary of State to determine the order of listing of candidates' names on ballots when petitions are received simultaneously, and to enjoin Paul Powell, Secretary of State, and the other named defendants, *ex officio* members of the Electrical Board of the State of Illinois, from certifying ballots and awarding ballot positions for the primary election in any manner which violates plaintiffs' right to equal protection under the Fourteenth Amendment.

This case and the challenged statute are a sequel to the case of Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969). The *Weisberg* case concerned the order in which candidates' names were placed on the ballot for the primary and general election to the Illinois constitutional convention.

The Illinois statute involved in the earlier *Weisberg* case prescribed that ballot positions were to be awarded according to the order in which candidates filed nominating petitions. The first day for filing petitions was July 7, 1969. The Secretary of State's office made arrangements with the Springfield post office for delivery of mail on Sunday, July 6, 1969. Petitions received in the Sunday mail were treated as if filed at 8:00 A.M. Monday. Where petitions for several candidates in one district were received in the Sunday mail, the Secretary of State considered them tied for first filing, and decided ballot positions according to his own preference among the several candidates.

On August 8, 1969 the Court of Appeals, pursuant to 28 U.S.C. § 1651, entered an order requiring the Secretary of State to award ballot positions on the basis of a lottery. In a per curiam opinion on Ocober 3, 1969 the court held that plaintiffs, in the evidentiary hearing in the district court, " * * * adequately established that top position on the ballot is one of a number of factors which tend to affect the outcome of an election, and which may have a substantial effect although the degree varies with the circumstances." (417 F.2d at 392.) The manner in which Secretary of State Powell certified ballots and awarded ballot positions was held to be purposeful and intentional discrimination designed to discourage the election of independents and others disfavored by Powell and to favor Powell's friends, who are generally entrenched party regulars. In particular his action was held to be violative of the Fourteenth Amendment in two respects: " * * * first, by informing some and leaving others in ignorance that mail received in Springfield on Sunday will be treated as arriving first during business hours on Monday, and second, by choosing favorites among those who get their petitions into the Sunday mail." (417 F.2d at 392.) The court, therefore, ordered that ballots for the general election, in those districts in which no primary was held, be certified in accordance with the results of the lottery held pursuant to the court's order of August 8, 1969.

Shortly thereafter on October 23, 1969, the Illinois General Assembly enacted Public Act 76–1964, challenged here, which provides in pertinent part:

(3) The Secretary of State and the various clerks with whom such peti-

tions for nomination are filed shall specify the place where filings shall be made and upon receipt shall endorse thereon the day and hour on which each petition was filed. Petitions filed by mail and received after midnight and on hand upon the opening of the office involved, shall be deemed as filed as of 8:00 a. m. of that day or as of the normal opening hour of such day, as the case may be, and all petitions received thereafter shall be deemed as filed in the order of actual receipt. Where 2 or more petitions are received simultaneously, the Secretary of State or the various clerks with whom such petitions are filed shall break ties and determine the order of filing, and such determination shall be conclusive.

Although the statute constitutes notice to potential candidates that petitions may be filed by mail, thus expressly eliminating one aspect of the invidious conduct condemned in the earlier *Weisberg* case, it does not expressly preclude favoritism and discrimination by the Secretary of State in breaking ties.

This suit was commenced on October 30, 1969. On December 5, 1969, in a memorandum opinion and order, 314 F. Supp. 677 (N.D.Ill.1970), we determined that federal jurisdiction was properly invoked under 28 U.S.C. § 1343, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201, 2202, and that a three-judge court was properly convened pursuant to 28 U.S.C. § 2281. Because Secretary of State Powell threatened to employ personal favoritism or systematic bias in favor of incumbents in breaking ties, we issued the following temporary injunction:

Accordingly, it is ordered and decreed that the defendants, and those acting in their behalf, are enjoined from breaking ties in the order of listing nominating petitions on primary ballots for the election to be held on March 17, 1970, and from certification thereof, by any means other than a drawing of candidates' names by lot or other nondiscriminatory means by which each of such candidates shall have an equal opportunity to be placed first on the ballot.

Allegedly in response to this injunction, defendant Powell developed and applied a scheme of tie-breaking whereby tied candidates with past legislative service, and incumbents, were given preferred ballot positions. Where none of the tied candidates had prior legislative experience, alphabetical order was used to determine ballot priority.

According to statute, certification by the Electoral Board of primary ballots can take place no later than January 15, 1970. Both parties urge an expeditious decision on the constitutionality of Public Act 76–1964 in order that an appeal may be perfected. Before turning to the statute itself, we will examine briefly the defendants' contention that the plaintiffs lack standing to maintain this action.

### Standing

The doctrine of standing imposes jurisdictional limitations upon the power of Federal courts to hear and decide cases. Its essential meaning was stated in general terms by the Supreme Court in Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968), as follows:

The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated. The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962).

■ Plaintiff Bernard Weisberg is a registered voter. He intends to vote in the March 17, 1970 primary for candidates who may not be favored by Secretary of State Powell. We hold that Weis-

berg does not have a sufficient "personal stake in the outcome" of this case, and therefore, dismiss him for lack of standing.

Although the complaint is not explicit, Weisberg seems to maintain that his right to vote will be burdened or the strength of his vote diluted because unconstitutional action by the defendants will benefit candidates whom he opposes. We have found no cases in which a cause of action for a voter was stated on the basis of such an attenuated personal interest. Previous cases in which voters have been allowed to challenge statutes have involved discriminatory state action which directly affects the significance of the plaintiff's individual vote. Thus voters have challenged malapportioned legislative districts, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691 (1962), gerrymandering on a racial basis, Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), and election laws which prevent them from voting for the candidate of their choice, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed. 2d 24 (1968). By contrast in the instant case, plaintiff merely alleges that discriminatory state action may cause other voters to act irrationally. We think this is an insufficient personal interest to state a cause of action, and, although injury to candidates as a result of such action may be severe, we will not permit this plaintiff to maintain this action on behalf of candidates in the primary election, cf. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).

The remaining plaintiffs in this action are: Robert E. Mann, a member of the Illinois House of Representatives, who has filed a nominating petition for reelection; Augustus A. Savage, who has filed a nominating petition as a candidate for the Democratic nomination to Congress; and Saul Mendelson, who has filed a nominating petition as a candidate for the Democratic nomination for the Illinois Senate. The defendants argue that these persons lack standing since they will not be injured as a result of the defendants' action in certifying ballots. We disagree.

The earlier *Weisberg* case found, and we agree, that the order of listing candidates' names on the ballot can affect the outcome of an election, and that candidates have a right to equal protection in the allocation of ballot positions. The defendants argue, however, that some of the remaining plaintiffs will be given priority positions under the system which Secretary of State Powell intends to employ. We do not think the standing of a candidate to challenge the constitutionality of Public Act 76–1964 depends upon whether he is actually treated unfairly. If the statute permits discriminatory treatment, then all candidates are threatened, and these plaintiffs have a sufficient personal stake to maintain this suit. We proceed to the merits of plaintiffs' complaint.

### The Constitutionality of Public Act 76–1964

The plaintiffs urge that Public Act 76–1964 was enacted deliberately to circumvent the decree of the Court of Appeals in *Weisberg* and to continue the unconstitutional practices condemned therein. To demonstrate this proposition they have presented evidence including hearsay statements by the proponents of the bill delivered on the floor of the legislature when the statute was under consideration. As further evidence they present "authoritative" administrative interpretations of the Act's purpose by the Secretary of State and by the attorney for the defendants. Finally, they call upon us to take judicial notice of the timing of the enactment of this statute and legislative hostility to the *Weisberg* decision and thereby to attribute an invidious purpose to the statute.

We hesitate to ascribe such a clearly unconstitutional design to the Illinois General Assembly. When considering the constitutionality of legislation, courts should eschew examination of legislative motives except in exceptional

circumstances, Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162 (1810). In examining a statute, we must determine whether a permissible legislative purpose exists. The ascertainment of purpose is objective, focusing on the language of the statute, its operation, and upon judicial construction of the terms of the statute. Although determination of motive and purpose may overlap, courts should generally defer to legislative judgments if a permissible purpose is conceivable.

■ When so viewed, we find Public Act 76–1964 to be constitutional. To establish a system by which ballot positions are allocated is certainly a permissible legislative purpose. We need not inquire whether this was the actual or overriding purpose present in the minds of most legislators. Although the system adopted in this statute may be far from optimal, it is rationally connected to the purpose and does not compel Secretary of State Powell to administer the statute in a discriminatory fashion.

Cases in which courts appear to have considered legislative motive do not undermine this conclusion but merely demonstrate that limits exist to judicial deference in the ascertainment of legislative purpose. Thus when racial discrimination prompts legislatures to enact laws which, while innocuous on their face, are intended to create de facto racial classifications, Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125 (1960); Davis v. Schnell, 81 F.Supp. 872 (S.D. Ala.) aff'd. per curiam, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093 (1949), or to encourage private discriminatory action, Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Hall v. St. Helena Parish School Board, 197 F.Supp. 649 (E.D.La.1961) aff'd. per curiam 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521 (1962), courts often ignore other purposes and rely solely upon the impermissible, discriminatory objective.

■ The plaintiffs argue that, even without consideration of legislative motive, Public Act 76–1964 should be invalidated since it constitutes an unconstitutional delegation of power without standards to the Secretary of State to break ties in the order of filing nominating petitions. Plaintiffs' reliance upon the traditional nondelegation doctrine, e. g., Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), is misplaced. That doctrine is a product of the separation of powers concept in the federal Constitution and is inapplicable to state statutes, Ohio ex rel. Bryant v. Akron Park District, 281 U.S. 74, 79, 50 S.Ct. 228, 74 L.Ed. 710 (1930); Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 552, 28 S.Ct. 178, 52 L.Ed. 327 (1908).

Plaintiffs maintain, however, that broad delegations without standards to state officials may violate due process. We agree that such delegations may create a substantial risk of arbitrary action and, where important rights are involved, a due process argument may be raised. Thus uncontrolled discretion in granting permits for the use of public facilities creates a substantial risk of prior restraints on speech and has been held to be unconstitutional, Niemotko v. Maryland, 340 U.S. 268, 271–273, 71 S.Ct. 325, 328, 95 L.Ed. 267, 280 (1951); cf. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). Similarly, delegation of power to local officials to administer a voting qualification provision of the Louisiana constitution was held to be in violation of due process, Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). We think those cases are distinguishable from the instant situation because of the fundamental importance of the rights involved and because of the inability of courts to effectively protect the plaintiffs' interests short of invalidating the delegation of power. Here we can adequately protect the plaintiffs' right to

equal protection in the allocation of ballot positions by the issuance of an injunction similar to that employed by the Court of Appeals in the *Weisberg* case.

 The plaintiffs have asked for a permanent injunction to prohibit Secretary of State Powell from engaging in lawless and unconstitutional action similar to that employed by him in previous elections. We think our jurisdiction as a three-judge court permits us to consider such an injunction even though we hold Public Act 76–1964 to be constitutional, Zemel v. Rusk, 381 U.S. 1, 6, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960).

In most cases injunctive relief on the basis of verbal threats of discriminatory action by state officials is considered premature. We think this general rule is inapplicable to cases involving preparation of ballots for an election because of the difficulty of fashioning relief after ballots have been certified, William v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), and because of the likelihood that plaintiffs' cause of action will be mooted by holding the election, Brockington v. Rhodes, 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969).

The threat of unlawful action in this case is sufficient to call for the issuance of a permanent injunction. As we noted in our memorandum opinion of December 5, 1969, Secretary of State Powell has repeatedly stated that Public Act 76–1964 permits him to engage in practices utilized in the past. More recently he has argued that favoring certain candidates on the basis of "incumbency" or "seniority" is constitutionally permissible and permitted by Public Act 76–1964. We disagree. The Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally. The *Weisberg* case expressly condemned Secretary of State Powell's attempt to favor personal acquaintances and party regulars by awarding them top positions on the ballot. We will not permit him to achieve the same result by the transparent device of favoring incumbents or those with "seniority." Therefore, we have decided to make permanent the temporary injunction issued by this court on December 5, 1969.

Accordingly, it is ordered and decreed that the defendants, and those acting in their behalf, are permanently enjoined from breaking ties in the order of listing nominating petitions on primary ballots for the election to be held on March 17, 1970, and from certification thereof, by any means other than a drawing of candidates' names by lot or other nondiscriminatory means by which each of such candidates shall have an equal opportunity to be placed first on the ballot.