PAUL E. TSONGAS & others [1] *vs.* SECRETARY OF THE
COMMONWEALTH.

Suffolk.    October 3, 1972. — December 29, 1972.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Elections.   Law or Fact.   Equity Jurisdiction,* Declaratory relief.
*Moot Question.*

Whether and to what extent first position on an election ballot confers
an advantage is a question of fact. [711–712]

In a suit in equity brought shortly before a primary and attacking as
unconstitutional G. L. c. 53, § 34, relating to the positions of can-
didates' names on primary ballots, where this court, because of
urgency of getting the ballots for the primary printed, had refused
to interfere with arranging the names of the candidates on the
ballots in accordance with the statute, it was held that the results
of the primary must be treated as final. [712–713]

In the circumstances and on the record of a suit in equity seeking
declaratory relief as to the constitutionality of G. L. c. 53, § 34,
and c. 54, § 42, relating to the positions of candidates' names on
primary and election ballots, this court, after the issue of consti-
tutionality had become moot with respect to a primary and an
election already held on ballots conforming to the statutes, deemed
it inappropriate to give such declaratory relief [713–715]) ; KAP-
LAN, J., dissenting.

Discussion of legislation and authorities dealing with the arrangement
of candidates' names on primary and election ballots. [715–719]

BILL IN EQUITY filed in the Supreme Judicial Court for
the county of Suffolk on July 6, 1972.

The suit was heard by *Reardon, J.*

*Walter H. Mayo, III,* Assistant Attorney General
(*Michael A. D'Avolio,* Assistant Secretary of the Com-
monwealth, & *Henry Sontag* with him) for the Secretary
of the Commonwealth; *W. Barry MacDonald,* for Daniel
J. Burke & another, interveners, also with him.

*William P. Homans, Jr.* (*Paul G. Counihan* with him)
for Paul E. Tsongas & others.

*Richard D. Clarey,* for Civil Liberties Union of Mas-
sachusetts, amicus curiae, submitted a brief.

[1] S. Lester Ralph and Paul G. Counihan.

*Gerald F. O'Leary,* amicus curiae, submitted a brief.
*Jacob C. Diemert,* for John T. Collins, amicus curiae, submitted a brief.

BRAUCHER, J.   The plaintiffs are two candidates for county commissioner and one for county treasurer of Middlesex County.   They sought injunctive and declaratory relief in the county court, contending that G. L. c. 53, § 34, as amended through St. 1970, c. 41,[2] and c. 54, § 42, as amended through St. 1972, c. 97,[3] relating to the position of candidates on primary and final election ballots, violate art. 9 [4] of the Declaration of Rights of the Massachusetts Constitution.   Two additional parties were permitted to intervene,[5] and memoranda were submitted by friends of the court.[6]   The single justice granted the relief sought, and the defendant and the interveners sought review by the full court.

We are informed by the defendant that nomination papers were available to all candidates for public office on April 15, 1972, and that the plaintiffs' papers were to be filed no later than July 5, 1972.   The plaintiffs' bill of complaint was filed on July 6, 1972.   A separate action was brought in the United States District Court for the

---

[2] Par. 2: "Names of candidates for nomination for all other offices to be voted for at a state primary of which they are the elected incumbents or the incumbents . . . appointed by the county commissioners, or appointed by the county commissioners and the clerk of the courts for a county, shall be placed first in alphabetical order and names of other candidates shall follow in like order."

[3] Par. 1: "Except as provided in section forty-one A [as to governor and lieutenant governor] . . ., the names of the candidates for reelection to any office to be filled at a state election of which they are the elected incumbents shall, except in places where voting machines are used, be placed first on the ballot in alphabetical order according to their surnames; next and in like order the names of candidates of political parties as defined in chapter fifty and the names of all other candidates shall follow in like order."

[4] "All elections ought to be free; and all the inhabitants of this commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

[5] County commissioners for Essex County.

[6] The incumbent county treasurer for Middlesex County, a candidate for United States Senator, a candidate for Representative in Congress, and the Civil Liberties Union of Massachusetts.

District of Massachusetts, seeking similar relief based on the Fourteenth Amendment to the Constitution of the United States; that action was stayed by a three-judge court on July 21, 1972, "until after the decision of the State question," and interlocutory relief pending appeal to the United States Supreme Court was denied on August 11, 1972, by a justice of that court.

After hearing, the decree of the single justice was entered in the county court on July 26, 1972. The appeals were argued before the full court on August 1, 1972. It then appeared that the printer would not guarantee delivery of ballots for the September 19 primary unless he received final copy by August 1. It also appeared that the plaintiffs had alleged that "a candidate given a position at the head of the ballot has distinct advantage over other candidates," that the defendant had demanded proof of that allegation, and that no evidence had been taken before the single justice.

Accordingly, an order of the full court was entered on August 1, staying the decree of the single justice, remanding the case to him for an evidentiary hearing and findings of fact with respect to the quoted allegation, and permitting the defendant to proceed with the printing of ballots and the arranging of names in accordance with the usual practice, "in order to prevent a disruption of the election process which might result from a ruling requiring precipitate changes."

Evidentiary hearings were held before the single justice on August 9, 1972, and September 6, 1972, and the single justice filed findings of fact on September 20, 1972. We summarize his findings. "Given the complex nature of voting behavior influenced by numerous variables, not all of which can be identified and few of which can be accurately measured, and given the inherent difficulty of conducting a direct empirical study of the effect of ballot position, proof of an advantage associated with being first on the ballot is necessarily imprecise." In a significant number of elections, first ballot position appears to be the most advantageous position. The most important

factors influencing the extent of the advantage are "visibility," the number of candidates, and the position on the overall ballot. In the primary election in issue in Middlesex County the office of county commissioner appeared seventh on the overall ballot, with eleven candidates; county treasurer was eighth and last, with four candidates. These offices are relatively low-level and unpublicized offices, and a candidate given first ballot position has a distinct advantage. Incumbency is a more significant and consistent advantage than first ballot position, but an additional advantage is conferred by first ballot position. The same factors are applicable in the final elections.

On September 19, 1972, before the findings of fact were filed, the primary election was held. The two plaintiffs who were candidates for county commissioner prevailed, and there will be no incumbents on the ballot for that position in the final election. Under G. L. c. 54, § 42, the candidates of political parties will be listed in alphabetical order; if such listing is unconstitutional, these plaintiffs seek a declaration to that effect, but in view of the pressure of time they do not now seek injunctive relief. The plaintiff who was a candidate for county treasurer appears to have lost to the incumbent in the primary; he seeks an order either directing that a new primary be held or placing him on the ballot for the final election. On October 6, 1972, an order of the full court was entered permitting the Secretary of State to proceed with the printing of ballots and arranging of names for the election of November 7, 1972, in accordance with the usual practice, omitting the name of the plaintiff Counihan as a candidate for county treasurer.

1. We adhere to the ruling implicit in our order of August 1, 1972, that the question whether and to what extent first ballot position confers a distinct advantage is a question of fact. See *Duarte, petitioner,* 331 Mass. 747, 748–749. In most of the cases on the point, it has been decided only after an evidentiary hearing. *Weisberg* v. *Powell,* 417 F. 2d 388, 392–393 (7th Cir.). *Bohus* v. *Board of*

*Election Commrs.* 447 F. 2d 821, 824 (7th Cir.). *Kautenburger* v. *Jackson*, 85 Ariz. 128, 131. *Matter of Holtzman* v. *Power*, 62 Misc. 2d (N. Y.) 1020, 1021, affd. 34 App. Div. 2d (N. Y.) 917, affd. 27 N. Y. 2d 628. *Elliott* v. *Secretary of State*, 295 Mich. 245, 249, has been cited to us as authority for taking judicial notice, but there the policy of rotating ballots had been embodied in legislation, and the court was merely expounding the legislative judgment. See *Groesbeck* v. *Board of State Canvassers*, 251 Mich. 286, 297. Treating the question as one of fact, we cannot say that the findings of the single justice are plainly wrong, and we accept them. Compare *Ray* v. *Registrars of Voters of Ashland*, 221 Mass. 223, 226; *Mansfield* v. *Secretary of the Commonwealth*, 228 Mass. 262, 264. His findings are consistent with the findings made in the cited cases relating to similar issues, and are supported by testimony taken before him, although there was contrary testimony on some points. It matters not that they might be contrary to the personal experience of some of us, or that we might have made different findings on the same evidence.

2. We also adhere to the ruling implicit in our order of August 1, 1972, that "a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes . . . ." *Reynolds* v. *Sims*, 377 U. S. 533, 585. Where it is impossible to grant relief without disrupting the election process, as where a last-minute change of ballots poses a risk of interference with the rights of the voters, relief may be denied. *Williams* v. *Rhodes*, 393 U. S. 23, 34–35. The plaintiffs recognized these principles. They contended that rotation of ballots, substantially in the manner provided in G. L. c. 54A, § 5, repealed by St. 1972, c. 596, § 2, for municipal elections by proportional representation or preferential voting, was the only way to·assure equal treatment of candidates and was therefore required by art. 9 of the Declaration of Rights; but they were willing, in view of the pressures of time, to accept ballot

placement by lottery.   We refused to run the risk of disrupting the primary.

If we assume, without deciding, that the Massachusetts Constitution requires the rotation of primary ballots, we think the same considerations which led us to refuse interlocutory relief now require us to treat the results of the primary as final.   *Roberts* v. *Byrd,* 344 S. W. 2d 378, 379–380 (Ky.).   *Groesbeck* v. *Board of State Canvassers,* 251 Mich. 286, 296–297.   *Bees* v. *Gilronan,* 116 N. E. 2d 317, 321 (Ohio Common Pleas).   *Schell* v. *Studebaker,* 174 N. E. 2d 637, 638 (Ohio Common Pleas).   The voters in the primary voted on official ballots furnished by public officials in accordance with a principle which had been embodied in our statutes for more than thirty years. St. 1938, c. 473, § 9.   As to final elections, see St. 1948, c. 272.   Those officials had no authority to depart from the statutes on the ground that the statutes were unconstitutional.   *School Comm. of Springfield* v. *Board of Educ. ante,* 417, 431–432.   The plaintiffs had not moved as promptly as they might have to obtain a judicial decision. The voters were not misled.   Failure to rotate the names did not lessen the opportunity of any voter to cast a vote for the candidate of his choice, nor did it create an opportunity to vote illegally.   Even though we assume that the first ballot position of the incumbents deprived the plaintiffs of an equal chance to benefit from the indifference of careless voters who had no personal choice but marked the first name, that speculative benefit does not override the rights of informed and intelligent voters to have their votes counted as they were cast.

3. What has been said above is a sufficient basis for disposing of the prayers of the plaintiffs for injunctive relief in this case.   They urge us, however, in the public interest, to make a declaration of rights with respect to the constitutionality of the statutory provisions awarding first ballot position to incumbents and otherwise providing for alphabetical listing.   The issues are of obvious public importance; they are issues "capable of repetition,

yet evading review." *Moore* v. *Ogilvie,* 394 U. S. 814, 816. *Dunn* v. *Blumstein,* 405 U. S. 330, 333, n. 2. *Briscoe* v. *Kusper,* 435 F. 2d 1046, 1052 (7th Cir.). See Note, 83 Harv. L. Rev. 1672, 1685–1687. They have been fully argued to us in an adversary proceeding in a concrete context, and we think it is appropriate to discuss them. *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731.

4. We think, however, that the present case is not one in which declaratory relief is appropriate. The question is whether the provisions of G. L. c. 53, § 34, and c. 54, § 42, so far as they grant first ballot position to incumbents and otherwise provide for alphabetical listing, deprive disadvantaged candidates of the "equal right . . . to be elected," in violation of art. 9 of the Declaration of Rights. It is not clear that this question is in any way different from the question whether these statutes deny equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. The plaintiffs, however, have chosen to present the latter question to a Federal court. We are not asked to pass on it, and it would not be appropriate for us to do so. Thus, any answer by us would be incomplete and "would not terminate the uncertainty or controversy giving rise to the proceedings." G. L. c. 231A, § 3, inserted by St. 1945, c. 582, § 1. If the Federal case were pressed to a decision, it might produce a conclusion different from ours. If we upheld the statutes, and the Federal case were not decided on the merits, it is not clear that our decision would serve any substantial public purpose.

We are not prepared on this record to hold that the statutes do or do not violate the Massachusetts Constitution. "To establish a system by which ballot positions are allocated is certainly a permissible legislative purpose." *Mann* v. *Powell,* 333 F. Supp. 1261, 1266 (N. D. Ill.). Where the system established by the Legislature is apparently biased, we think it can be upheld only if there is a determination either that there is in fact no unfairness or that there are substantial considerations balancing the apparent unfairness. The present record does not

permit such determinations to be made with confidence. It establishes that a candidate given first ballot position has a distinct advantage over other candidates, but it contains no basis for evaluating the comparative advantages and disadvantages of alternative systems.

5. The authorities relied on to establish the invalidity of the statutes are largely inapposite. Legislation in other States shows a variety of bases for assigning ballot position. Rotation of names on successive ballots as in G. L. c. 54A, § 5, repealed by St. 1972, c. 596, § 2, or rotation from one voting machine to the next, seems to be most common. See Bain and Hecock, Ballot Position and Voter's Choice (Wayne St. Univ. Press, 1957) 16–26; Note, 45 S. Cal. L. Rev. 365, 379, n. 37; Kelman, Ballot Designations: Their Nature, Function and Constitutionality, 12 Wayne L. Rev. 756, 768, n. 61. A number of States use the alphabet; others use a lottery. Time of filing has been used, as has the number of votes received in a primary or in a particular previous election, such as that for Governor. See *Weisberg* v. *Powell*, 417 F. 2d 388, 389 (7th Cir.) ; *Matter of Cooke* v. *Lomenzo*, 31 N. Y. 2d 244, 247. A statute giving first ballot position to incumbents was enforced in *Salinger* v. *Jordan*, 61 Cal. 2d 824, 827. So far as we have been able to discover, none of these bases has ever been held unconstitutional of itself.

Each of the cases in which the basis for assigning ballot position was held unconstitutional arose in a setting very different from the present case. In Michigan the statutes required rotation of primary ballots but not of ballots in partisan elections, where ballots contained party designations. When judicial elections were made nonpartisan, it was held that they should be conducted under the rule for primaries. *Elliott* v. *Secretary of State*, 295 Mich. 245, 249–250. Subsequently, at a time when ballot designations were generally forbidden by a specific constitutional provision, a statute providing for listing incumbents first, followed by other candidates in alphabetical order, was held unconstitutional, apparently

in part at least because the first ballot position had the effect of a ballot designation. *Arvan* v. *Wayne County Clerk*, 381 Mich. 761, as explained in *Wells* v. *Kent County Bd. of Election Commrs.* 382 Mich. 112, 122–123.

In Arizona, statutes were enacted providing for rotation of names on paper ballots, but for alphabetical listing on voting machines. The court held the latter statute discriminatory and unconstitutional, and affirmed a judgment directing that names of candidates be rotated on voting machines "in the most practicable and fair way possible." *Kautenburger* v. *Jackson*, 85 Ariz. 128, 130–131. Cf. *Carson* v. *Gooding*, 4 Ariz. App. 252, 254.

In a nonpartisan election of delegates to a constitutional convention in Illinois, a primary was required to be held if there were more than four candidates, and the four receiving the highest number of votes were listed on the ballot for the final election in the order of the number of votes received at the primary. In the primaries and in districts where there were not more than four candidates, the candidates were arranged in the order in which nomination papers were filed. The Secretary of State arranged to receive nomination papers by mail before the first date for filing, informing only those he favored, treated the papers so received as tied for first filing, and broke ties by giving preference to those he knew. This practice was held to deny to other candidates the equal protection of the laws, and an order was entered that the ballot position of the preferred candidates so treated as tied for first filing should be determined by lot. *Weisberg* v. *Powell*, 417 F. 2d 388, 393–394 (7th Cir.). Subsequently a statute authorized the Secretary of State to break ties in such cases, and he announced that he would follow the method he had used previously. A preliminary injunction against use of that method was issued. *Mann* v. *Powell*, 314 F. Supp. 677 (N. D. Ill.), affd. 398 U. S. 955. It was then held that the court would not permit the Secretary of State to achieve the same result condemned in the *Weisberg* case "by the transparent device of favoring incumbents or those with 'seniority.' "

*Mann* v. *Powell,* 333 F. Supp. 1261, 1267 (N. D. Ill.). In a later case relief was denied against a practice of placing Democratic candidates in the city of Chicago on the top line of the ballot, on the ground that there was a failure of proof of resulting advantage. *Bohus* v. *Board of Election Commrs.* 447 F. 2d 821, 825 (7th Cir.).

In New York, ballot position in primaries was generally determined by lottery. That practice had been criticized and three proposals for "reform" had been made: rotation from election district to election district, preference for incumbents, and preference for candidates designated by party committees. See *Matter of Holtzman* v. *Power,* 64 Misc. 2d (N. Y.) 221, 225–226, reversed on other grounds, 34 App. Div. 2d (N. Y.) 779. A statute applicable only to 1970 primaries in New York City provided that the names of incumbents should be printed first, the order of the remaining candidates being determined by lot. A trial judge held there was no rational basis for favoring incumbents or for the restrictions to one city and one year, and directed the ballot positions be determined by lot. The argument that voters were entitled to know who was the incumbent was not persuasive, since "nowhere would this information appear on the ballot" and the voters might be misled in contests where no incumbent was a candidate. The decision was affirmed by two divided appellate courts. *Matter of Holtzman* v. *Power,* 62 Misc. 2d (N. Y.) 1020, 1024–1025, affd. 34 App. Div. 2d (N. Y.) 917, affd. 27 N. Y. 2d 628. The statute was subsequently amended to provide for rotation by election districts. N. Y. Election Law (17 McKinney's Consol. Laws of N. Y.) § 242-a, as amended by St. 1972, c. 146.

6. The situation in Massachusetts is quite different from that in the cases summarized above. The principle of listing incumbents first was inserted in our statutes more than thirty years ago, and alphabetical listing has a much longer history. The combination of the two is now the general rule, both in primaries and in general elections, subject to exceptions for proportional representa-

tion and preferential voting (G. L. c. 54A, § 5, repealed by St. 1972, c. 596, § 2), for candidates indorsed by State conventions (G. L. c. 53, § 34), and for some situations involving voting machines or electronic voting systems (G. L. c. 54, § 33). Beginning in 1954 the principle of listing incumbents first was extended to certain appointed incumbents, including county officers (G. L. c. 54, §§ 143, 144), when they are candidates in primaries (St. 1954, c. 225; St. 1958, c. 289; St. 1960, c. 216; St. 1962, c. 758, all amending G. L. c. 53, § 34), but not when they are candidates in final elections (G. L. c. 54, § 42).

Incumbents may be and ordinarily are identified as such on primary ballots (G. L. c. 53, §§ 34, 45), and elected incumbents of most offices must be identified as candidates for reëlection on ballots in final elections (G. L. c. 54, § 41). *Galluccio* v. *Election Commrs. of Cambridge,* 339 Mass. 587, 588–589. County officers are regularly so designated. Similar designations were held unconstitutional in *Rees* v. *Layton,* 6 Cal. App. 3d 815, 822–823. In argument made to us before the primary was held, however, the plaintiffs waived any contention that such a designation is constitutionally forbidden, stating that in their campaign they hoped to make incumbency a negative factor. The brief of the incumbent county treasurer, filed after he prevailed in the primary, argues that they were very successful in that effort. The incumbents were in fact designated as such on the primary ballots. The single justice found that incumbency confers a distinct advantage on a candidate for county commissioner or county treasurer. We infer, although no finding was made on the point, that that advantage is reinforced by designation of the candidate on the ballot as an incumbent.

The fact that incumbents are designated as such on the ballots distinguishes this case from those in which legislation assigning first ballot position to incumbents has been held unconstitutional. Compare *Arvan* v. *Wayne County Clerk,* 381 Mich. 761, as explained in *Wells* v. *Kent County Bd. of Election Commrs.* 382 Mich. 112,

122–123; *Matter of Holtzman* v. *Power*, 62 Misc. 2d (N. Y.) 1020, 1024–1025, affd. 34 App. Div. 2d (N.Y.) 917, affd. 27 N. Y. 2d 628. Our statute is also different from the California statute which provides for rotation of candidates other than incumbents and might be attacked as protecting incumbents by promoting random distribution of votes against incumbents.

No explanation of the Massachusetts statutes has been furnished to us in terms of any coherent theory, and there is before us no evidence or findings as to the comparative advantages and disadvantages of the available alternatives. The Legislature may have thought that alphabetical listing of candidates on a ballot enables a voter to find quickly the name of the candidate he wishes to vote for in much the same way as alphabetical listing in a telephone book. It may also have thought that many voters decide first whether to vote for or against incumbents, and that listing incumbents first and identifying them as such helps to give the voters equal, easy and unrestricted opportunities to declare their choice for each office.

Whether statutes resting on such premises are valid may depend in part on what alternatives are available. Listing by lottery might assure each candidate an equal chance at the "donkey vote" (a phrase used in the literature to describe the vote determined by first ballot position), although there seems to be some statistical evidence for an independent voter preference for names beginning with letters early in the alphabet. See Note, 45 S. Cal. L. Rev. 365, 366, n. 2. But it is hard to see any public benefit in allocation of the "donkey vote" by lottery, and the Legislature might look unfavorably on a scheme which in its view might run the risk of actually nominating a candidate who would have little chance aside from the lottery. See *Matter of Holtzman* v. *Power*, *supra*, 64 Misc. 2d (N. Y.) at 225.

Rotation of ballots avoids the danger of choosing a public officer primarily by lottery. It gives each candidate an equal share of the "donkey vote." But it creates

extra work and some extra expense, and may create some risk of error and delay in counting paper ballots. The reported cases suggest that it creates special problems where voting machines are used. It reduces the utility of the sample ballots required by G. L. c. 53, § 33, and c. 54, § 48, and may complicate the problem of campaigning and even confuse the voter, since the ballots will have a variety of formats depending on the numbers of candidates for various offices.

The propriety of the Massachusetts provisions also depends on what factual assumptions are made. We are bound by the findings of the single justice, since they are not plainly wrong. But the Legislature is entitled to make its own findings on controversial issues of fact. The defendant has urged us to find, contrary to the findings of the single justice, that first ballot position has not conferred a systematic advantage on candidates for county commissioner in Massachusetts, and indeed that first ballot position has conferred a disadvantage on incumbents running for county commissioner. We decline to make such findings, but we agree that there was evidence before the single justice which would have justified such findings. In the words of the single justice, the proof was "necessarily imprecise."

Finally, the Legislature may have thought it desirable to establish a reasonably uniform system of assigning ballot positions for all offices. If the Legislature thought the system worked well and fairly for the more important offices, it may have deliberately taken the risk that a speculative benefit might be conferred on some candidates for minor offices by reason of accidental and irrational factors. The propriety of such a decision would turn on matters of degree on which the present record sheds little light.

The various possibilities suggested above rest largely in speculation. They were not canvassed in the testimony before the single justice nor indeed in the briefs. Since the controversy giving rise to this case is now moot, we do not think it would be appropriate to remand the

case for further hearings. But in the absence of further data we cannot with confidence make a binding declaration of rights.

7. The decree of the single justice is vacated. A final decree is to be entered in the county court dismissing the plaintiffs' bill of complaint.

*So ordered.*

Mr. Justice Wilkins became a member of this court on November 2, 1972, and took no part in this case before that time. Thereafter he was called in pursuant to S.J.C. Rule 1:18, 351 Mass. 741, and took part in the deliberations on points 4 through 6 of the opinion.

KAPLAN, J. (dissenting in part). I have a high respect for the careful opinion of the majority and regret that I cannot concur in it. I believe a declaratory decree should be rendered: although the immediate controversy has become moot, the question is alive and is likely to recur in the same form unless a decision is made. *Moore* v. *Ogilvie,* 394 U. S. 814, 816. Cf. *Reilly* v. *School Comm. of Boston, ante,* 689–695. The essential question is upon the validity of the statutory procedure which, in an ordinary system of contested elections, places the incumbent first in the listing of candidates on the ballot. I think the procedure is invalid, accepting as I do the finding of the single justice that first place confers an advantage and thereby creates an inequality. The decided cases can no doubt be distinguished in particulars, but courts that have accepted the proposition that first place gives an advantage have thought the advantage impermissible. That appears to be the general effect of the authorities. The majority opinion suggests that the inequality can be palliated or justified by a number of practical or prudential considerations and it declines to go ahead to a conclusion because these considerations have not been fully explored in the record. But the opinion pays too little attention to the fact that we are dealing with a procedure that relates to suffrage. We were reminded in the last

Term of the United States Supreme Court that statutes which tend to produce inequality among voters may not be sustained if they can be shown to have merely "some rational basis" — they must rather withstand "a more rigid standard of review"; and, further, "the rights of voters and the rights of candidates do not lend themselves to neat separation . . .." *Bullock* v. *Carter*, 405 U. S. 134, 142, 143. These ideas are as congenial to our Declaration of Rights as they are to the Constitution of the United States. Can it be said that the present statute is "reasonably necessary to the accomplishment of legitimate state objectives" (405 U. S. at 144) when we know that there are procedures available, feasible, and in current use which do not suffer at all, or suffer far less, from the reproach of inequality. I would add that the muddle of the double litigation in which the parties are involved would be largely disposed of if we should hold the present procedure invalid, and something can be said for doing the particular job without looking to the Federal Building.